FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 30 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

# COMPLETE EXHIBIT REPRODUCTIONS

No. 4:26-cv-00827-DPM-JJV

Complete copies of the 13 PDF sources assembled for the opposition and proposed reply. Original pages and embedded exhibits are preserved. This reference set includes documents already filed by both sides; the filing notes identify the designated motion attachments.

**Source 1.** ECF 9 entity-correction order
1 original page(s). Reproduction pages 3.

**Source 2.** Western District order adopting report
1 original page(s). Reproduction pages 4.

**Source 3.** Complete Western District report and recommendation
20 original page(s). Reproduction pages 5–24.

**Source 4.** Complete Trade Assurance purchase contract
8 original page(s). Reproduction pages 25–32.

**Source 5.** Complete small-claims complaint copy and receipt
3 original page(s). Reproduction pages 33–35.

**Source 6.** ECF 44 motion concerning removal and jurisdiction
4 original page(s). Reproduction pages 36–39.

**Source 7.** ECF 45 supporting jurisdiction brief
5 original page(s). Reproduction pages 40–44.

# COMPLETE EXHIBIT REPRODUCTIONS — INDEX CONTINUED

No. 4:26-cv-00827-DPM-JJV

**Source 8.** ECF 47 AGHL motion to dismiss
3 original page(s). Reproduction pages 45–47.

**Source 9.** ECF 48 AGHL brief and all seven embedded exhibits
64 original page(s). Reproduction pages 48–111.

**Source 10.** ECF 49 U.S. company opposition
4 original page(s). Reproduction pages 112–115.

**Source 11.** June 18, 2026 Trade Assurance email
1 original page(s). Reproduction pages 116.

**Source 12.** June 22, 2026 Trade Assurance email, both pages
2 original page(s). Reproduction pages 117–118.

**Source 13.** July 7, 2026 Trade Assurance email
1 original page(s). Reproduction pages 119.

The ZIP also includes each source PDF as a separate file in Source_Attachments, plus S14_Trade_Assurance_Original.eml. The June 18, June 22, and July 7 PDF messages are also reproduced as Reply Exhibits A–C in the proposed reply. The original email file is preserved separately, not retyped.

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**BRADLEY C. BURCHFIELD** **PLAINTIFF**

**v.** **Case No. 4:22-CV-861-LPR**

**ALIBABA GROUP HOLDING LIMITED, Alibaba, et al.** **DEFENDANTS**

**ORDER**

Mr. Burchfield's Motion to Amend his Complaint (Doc. 6) for the limited purpose of correcting the named business entity is GRANTED. The Clerk is directed to update the docket sheet by making the following changes: (1) "Alibaba.com Inc" should be renamed "Alibaba.com, LLC" and (2) "Alibaba Group Holding Limited" should be renamed "Alibaba Group (U.S.) Inc." The Clerk is also directed to reissue summonses for these Defendants and return them along with a copy of the file-marked Complaint to Mr. Burchfield for completion of service. For good cause shown in Doc. 5, time to serve the Defendants is extended; the new deadline is 90 days from the date of this Order.

IT IS SO ORDERED this 6th day of December 2022.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BRADLEY BURCHFIELD PLAINTIFF

v. Civil No. 1:22-cv-1023

ALIBABA GROUP HOLDING LTD., *et al* DEFENDANTS

**ORDER**

Before the Court is the Report and Recommendation filed May 17, 2022, by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 39. Judge Bryant recommends that Plaintiff's federal claims be dismissed. He further recommends that the Court decline to exercise jurisdiction over the state law claims.

Plaintiff has not filed objections to the Report and Recommendation, and the time to object has passed. *See* 28 U.S.C. § 636(b)(1). Therefore, the Court adopts the Report and Recommendation (ECF No. 39) *in toto*. Pursuant to 28 U.S.C. § 1915(g), Plaintiff's federal claims are **DISMISSED** for failure to state a claim upon which relief may be granted. Because the Court is dismissing the federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, this case is **DISMISSED**. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal of this Order would not be taken in good faith.

**IT IS SO ORDERED**, this 9th day of June, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BRADLEY C. BURCHFIELD PLAINTIFF

v. Civil No. 1:22-cv-01023

ALIBABA GROUP HOLDING LTD.; JACK YUR MA, Founder, Alibaba Group Holding Limited; JP MORGAN CHASE BANK, 10% Investor, Alibaba Group Holding Limited; AMAZON, 10% Investor, Alibaba Group Holding Limited; BLACKROCK, 10% Investor, Alibaba Group Holding Limited; CASEY ZHAO, Alibaba Cloud; ERICA WANG, Employee/Salesperson Xichang New Material Limited; SWEETY YIN; DRUG ENFORCEMENT AGENCY; JOSEPH C. TSAI, Co-Founder, Alibaba Group Holding Limited; JONATHAN ZHAOXI LU, CEO and Director, Alibaba Group Holding Limited; MAGGIE WEI WU, CFO, Alibaba Group Holding Limited; DAVID ZHAIG, CEO, Alibaba Group Holding Limited; XICHANG NEW MATERIALS LTD.; TIMOTHY J. SHEA, Director, Drug Enforcement Agency; and JOHN DOE ("JUAN DOE") DEFENDANTS

**REPORT AND RECOMMENDATION**

Plaintiff, Bradley C. Burchfield, ("Burchfield") currently an inmate of the Randall L. Williams Correctional Facility of the Arkansas Division of Correction, filed this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and various other federal statutes as well as state law claim. Burchfield proceeds *pro se* and *in forma pauperis* ("IFP"). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. This case concerns Burchfield's purchase of rust inhibiter and acrylic nail adhesive containing isopropylbenzylamine

from the website www.alibaba.com.

The case is before the Court for preservice screening of the Complaint under 28 U.S.C. § 1915(e)(2). Pursuant to § 1915(e)(2), the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

## I. BACKGROUND

Burchfield filed his initial Complaint on February 28, 2022. On March 23, 2022, Burchfield filed an Amended Complaint (ECF No. 5). While an Amended Complaint usually supersedes the original complaint, it is clear that from Burchfield's references to allegations in the initial Complaint, he meant for the Amended Complaint to be a supplement to the initial Complaint. *See e.g., Owens v. Isaac,* 487 F.3d 561, 564 (8th Cir. 2007)(district court should have read the original and amended complaints together as plaintiff intended). Additionally, on April 6, 2022, Burchfield filed a Supplement (ECF No. 15).

Burchfield owns Burchfield Sales & Consulting, LLC, and Burchfield's Welding and Fabrication, LLC. (ECF No. 15 at 1). In March of 2020, Burchfield "made purchases from Alibaba Group Holding Limited's ("Alibaba's") electronic platform (www.alibaba.com) for substances advertised as 'rust inhibitors' to be used as weld-through etch primer in the course of his business." *Id.* This substance was also marketed as "acrylic nail adhesive" which Burchfield purchased. *Id.*

Burchfield used the rust inhibiter as a "top-applicated primer" and found the product did not inhibit rust. (ECF No. 5 at 2). When he used the acrylic nail adhesive, "the nails fell off." *Id.* Burchfield also used the substance on his welder and it "rusted the main armature and electrical coils . . . [and] will no longer strike an arc." *Id.* Burchfield indicates he sustained

excessive business losses as a result of his use of the product. *Id.* Burchfield says he put the substance on the under carriage of his two vehicles resulting in weaking of the "aluminum on the transfer case leading to the failure of the Allison Transmission" in his 2002 Chevrolet Silverado 3500. *Id.* at 6.

Burchfield indicates he spent "upwards of $6,000" on the product. (ECF No. 5 at 2). After research, Burchfield says he discovered the substance was a "by-product when pharmaceutical companies made methamphetamine." *Id.* Burchfield states the product is sold by various entities. *Id.* He also indicates the Drug Enforcement Agency's ("DEA's") website says the substance is "federally legal." *Id.* Burchfield states he was arrested with some of the product in his possession and charged with possession of methamphetamine. *Id.* He indicates all charges except one were dismissed. *Id.*

Burchfield states that he also discovered that silencers, M-16 bolt carriers, firing pins, armored vehicles, and personnel carriers could be purchased on the website. (ECF No. 5 at 4). This led Burchfield to "believe that the Alibaba platform is in all reality a narcotics and illegal arms 'criminal enterprise' which has also committed wire fraud 18 U.S.C. § 134[3] and mail fraud 18 U.S.C. § 134[1] by mislabeling the substances being paid for and the substances being shipped as they are shipped under the names calcium acetate, poly-vinyl alcohol, and acrylic nail resin." *Id.* Burchfield alleges that "[a]t all times, each Defendant was materially involved in multiple acts herein constituting a 'pattern of racketeering' [and] acts of terrorism as foreign narcotic kingpins." *Id.*

In January of 2021, Burchfield filed a complaint filed under 42 U.S.C. § 1983, *Burchfield v. Jones, et al.*, Case No. 6:20-cv-06150. (ECF No. 1 at 1). After he served the complaint, Alibaba announced in February of 2021 that it would no longer sell isopropylbenzylamine on its

electronic platform after April 2021. *Id.* Burchfield further alleges Alibaba committed securities fraud and that its stock price fell in half after this announcement. *Id.* Burchfield alleges that investors JP Morgan Chase, Amazon, and Blackrock withdrew their investments. *Id.*

In December of 2021, while at the house of his fiancée, Burchfield alleges he received a death threat from an unknown Mexican referring to Casey Zhao ("Zhao") who "operates an Alibaba website.[1]" (ECF No. 1 at 1). Burchfield alleges this threat establishes a pattern on racketeering activity in violation of 18 U.S.C. §§ 1961(1)(A), 1512 and 1513 "by tampering or retaliating against a witness or informant." *Id.* Burchfield contends the threat of violence is a violation of 18 U.S.C. §§ 1961 and 1962. He further maintains the Defendants "have an 'enterprise' established to sell narcotics and defraud the American public." *Id.*

In the Amended Complaint (ECF No. 5), Burchfield indicates that in addition to RICO he believes the Defendants' conduct violated the Alien Tort Act, 18 U.S.C. § 2333(a), the Anti-Terrorism Act, the Terrorism Risk Insurance Act, 21 U.S.C. § 1901, the Anti-Terrorism Clarification Act of 2018, and the Controlled Substances Act. Burchfield also asks to have the Defendants listed with the Office of Foreign Asset Control as a foreign narcotics kingpin pursuant to 18 U.S.C. §§ 2531, 2333-34. Finally, Burchfield asserts state law claims of theft under Ark. Code Ann. § 16-118-107, violations of the Online Marketplace Inform Act, Ark. Code Ann. §§ 4-119-101-05, and unjust enrichment. *Id.*

In his Supplement (ECF No. 15 at 1), Burchfield alleges the DEA's statement that isopropylbenzylamine is a federally legal substance "interferes with laws passed by the General

---

[1] The Amended Complaint (ECF No. 5 at 2) mentions threats made to his fiancée. While Burchfield has a right to represent himself, he cannot represent others. 28 U.S.C. § 1654. For this reason, the claims of his fiancée are not at issue.

Assembly of Arkansas regarding methamphetamine as the two substances have the same chemical formula." Burchfield states that the "pre-emptive theory of 21 U.S.C. § 903" and the Supremacy Clause create a conflict between the current drug laws in Arkansas and the statement on the DEA website which cannot consistently stand together. *Id.* Burchfield maintains the DEA created a public nuisance by allowing the other Defendants to "bypass the Controlled Substances Act" and sell isopropylbenzylamine. *Id.* at 1-2. Burchfield asserts that the "constitutionality of laws passed by the General Assembly of Arkansas and Congress can only be heard by the Supreme Court." *Id.* at 1. Burchfield ask that the case be referred pursuant to 28 U.S.C. § 2403 to the Supreme Court before dismissing the claims against the DEA. *Id.* at 2.

As relief, Burchfield seeks treble damages based on the threat to his life and the life of his fiancée (ECF No. 1 at 2). He seeks compensatory damages in the amount of $22,550 for damage to the welder and truck and in the amount of $18,000 for loss of business capital. (ECF No. 5 at 7). He seeks declaratory relief to have Defendants designated as foreign narcotics kingpins and to have their asserts frozen as well as the assets of third-party sellers on the Alibaba website and associated websites. *Id.* He seeks punitive damages in the amount of 500 billion dollars. *Id.* He also seeks witness protection for he and his fiancée.

## II. APPLICABLE STANDARD

The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather

than to vindicate a cognizable right. *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988); *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III. DISCUSSION

### A. RICO Claims

"The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers." *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 990 (8th Cir. 1989)(*citing United States v. Turkette*, 452 U.S. 576, 591 (1981)). RICO, codified at 18 U.S.C. §§ 1961 *et seq.*, provides a civil cause of action for " [a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). To state a RICO claim, Burchfield must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

#### (1) Existence of an Enterprise

The term enterprise is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n association-in-fact enterprise must have a least three structural features: a purpose, relationships among those associated with the enterprise, and

longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938, 946 (2009). "The enterprise is not the pattern of racketeering activity. Rather, the enterprise must have a common or shared purpose, some continuity of personnel, and an ascertainable structure distinct from the pattern or racketeering." *Asa-Brandt, Inc. v. ADM Investor Services, Inc.,* 344 F.3d 738, 752 (8th Cir. 2003)(citing *United States v. Turkette,* 452 U.S. 576, 583 (1981)).

Burchfield's allegations are insufficient to allege the existence of an ascertainable structure distinct from the pattern of racketeering activity. In fact, he refers to the Alibaba platform as being the criminal enterprise, without reference to any association with the other named Defendants. (ECF No. 5 at 4). It appears Burchfield believes that because he has identified some of the named Defendants as employees, officers, founders, or investors in Alibaba Group Holdings that they are automatically part of a RICO enterprise. This is insufficient to allege the necessary structural features as set forth in *Boyle,* 556 U.S. at 946.

**(2). Existence of a Pattern**

For a pattern to exist there must be at least two acts of racketeering activity. 18 U.S.C. § 1961(5). "There are two issues here that should be kept distinct: Whether the plaintiffs have sufficiently pleaded acts of racketeering, and whether those acts can be said to form a pattern." *Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 919 (8th Cir. 2001).

**(a). Acts of Racketeering Activity**

The term racketeering activity is defined to include a variety of criminal offenses under state and federal law including mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, tampering with a witness, victim, or informant, 18 U.S.C. § 1512, and retaliating against a witness, victim, or informant, 18 U.S.C. § 1513—the four federal statutes Burchfield identifies as predicate

acts in this case. 18 U.S.C. § 1961(1). Burchfield also alleges a violation of State law dealing with controlled substances as a predicate act. The violations of law are referred to as predicate offenses or predicate acts and must be present to support the existence of a pattern of racketeering activity. *Asa-Brandt,* 344 F.3d at 752.

The Supreme Court has "explained that, to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.' Proximate cause for RICO purposes, . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link is '"too remote," "purely contingent," or 'indirect is insufficient.'" *Hemi Group, LLC v. City of New York, N.Y.,* 559 U.S. 1, 9 (2010)(quoting *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, 271, 274 (1992)). In *Hemi Group,* the Supreme Court reaffirmed that it does not go beyond the "first step" in determining "proximate cause inquiries under RICO." *Id.* at 10. When the alleged violation did not lead "'directly to the plaintiff's injuries,'" the plaintiff "failed to meet RICO's 'requirement of a direct causal connection' between the predicate offense and the alleged harm." *Id.* at 10-11 (quoting *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 460-61 (2006)).

**(1) Mail Fraud and Wire Fraud**

When a predicate offense is based on fraud, such as mail fraud and wire fraud, the pleading must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *Nitro Distrib, Inc. v. Altico, Inc.,* 565 F.3d 417, 428 (8th Cir. 2009). "Rule 9(b) requires a party alleging fraud or mistake 'state with particularity the circumstances constituting a fraud or mistake.'" *Id.* (citing Fed. R. Civ. P. 9(b)).

After discovering various other items, such as silencers, bold cutters, firing pins, armored vehicles, and personnel carriers could also be purchased on the site, Burchfield concluded that the

Alibaba platform was in "reality a narcotics and illegal arms 'criminal enterprise' which has also committed wire fraud . . . and mail fraud . . . by mislabeling the substances being paid for and the substances being shipped as they are shipped under the names calcium acetate, poly-vinyl alcohol, and acrylic nail resin." *Id.* at 4.

As to all Defendants other than Alibaba and David Zhaig, Burchfield fails to allege the key components of a fraud claim "the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011)(cleaned up). Simply put, Burchfield's claims against the remaining Defendants do not meet the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.

"The elements of mail fraud under 18 U.S.C. § 1341 are (1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud, (3) reasonable foreseeability that the mail would be used, and (4) that the mail was used in furtherance of some essential step in the scheme." *United States v. Cole,* 721 F.3d 1016, 1021 (8th Cir. 2013)(cleaned up). The elements of wire fraud under 18 U.S.C. § 1343 "are identical to the elements of mail fraud except wire fraud involves interstate wire communications rather than mail. *Id.*

Burchfield's allegations against Alibaba and David Zhaig are sufficient to state a plausible claim of mail fraud as the allegedly defective product was shipped to him in the mail in furtherance of the alleged scheme to defraud. However, Burchfield has not alleged the use of interstate wire communications.

**(2). Intimidation of, or Retaliation Against, a Witness**

Next, Burchfield alleges intimidation of, and retaliation against, a witness in violation of 18 U.S.C. §§ 1512-1513. Presumably Burchfield believes he will someday be a witness against

one or more of the Defendants;[2] the alleged threating message was in Spanish and delivered via Facebook in December of 2021 by an unidentified person; the threat referenced a named Defendant, Casey Zhao.

Section 1512 "prohibits only specific types of conduct—intimidation, physical force, threats, or attempts to do so, misleading conduct, or harassment." *United States v. Risken,* 788 F.2d 1361, 1368 (8th Cir. 1986). Burchfield alleges he received a death threat which amounts to tampering with or retaliating against him in violation of § 1512. Burchfield does not indicate what subsection of § 1512 he believes was violated by this threat. Subsection (a)(1) involves killing or attempts to kill another person and is not applicable. Subsection (a)(2)(C) involves the use of physical force or the threat of physical force against a person to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings." Subsections (b)(1) & (2) apply only to official proceedings which are not alleged here. Subsection (b)(3) could possibly apply and provides as follows:

> (b)Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> * * *
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission of or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings.

---

[2] The civil action Burchfield brought under 42 U.S.C. § 1983 was closed on July 13, 2021, *Burchfield v. Jones, et al,* Civil No. 6:20-cv-06150. This case was not filed until April 13, 2022. Thus, Burchfield cannot be referring to being a witness in that case.

18 U.S.C. § 1512(b)(3). While § 1512 is not limited to pending official proceedings and covers potential witnesses and even those reporting criminal activity, *Riskin,* 788 F.2d at 1368, Burchfield has made no factual allegations that any of the named Defendants took any of the prohibited actions or even how, or when, he believes he might engage in a protected activity such as being a witness or communicating with law enforcement officers. Burchfield has not alleged a plausible violation of § 1512.

Section 1513 covers the retaliation against a witness, victim, or informant. 18 U.S.C. § 1513. Once again Burchfield does not cite to any specific subsection, however, Burchfield has not alleged that he acted as a witness or informant. Further, he has made no factual allegations suggesting that any of the named Defendants took retaliatory actions against him or threatened to do so. Burchfield has not alleged a plausible violation of § 1513.

**(3). Violation of State Controlled Substances Laws**

Section 1961(1)(A) includes in its definition of racketeering activity "any act or threat . . . dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). Burchfield appears to be contending that isopropylbenzylamine should be a controlled substance under the Arkansas Controlled Substances Act, Ark. Code Ann. 5-64-101 *et seq.* However, he fails to allege that isopropylbenzylamine is a controlled substance or listed chemical under that Act. Burchfield's belief that this substance should be controlled under both Federal and State law is simply insufficient. Burchfield has not alleged a plausible violation of Ark. Code Ann. §§ 5-64-101 *et seq.*

**(b). Whether the Acts Form a Pattern**

These acts of mail fraud must be related and must "amount to or pose a threat of continued

criminal activity." *United Healthcare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 571 (8th Cir. 1996)(citation omitted). "The relationship prong of the pattern element is satisfied if the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F.3d 402, 406 (8th Cir. 1999)(quoting *Handeen v. Lemaire,* 112 F.3d 1339, 1353 (8th Cir. 1997)). The continuity prong, "can be either closed-ended or open-ended. Closed-ended continuity involves 'a series of related predicates extending over a substantial period of time;' open ended continuity involves acts which, by their nature, threaten repetition into the future. Multiple predicates within a single scheme are encompassed within the RICO statute as long as the relationship and continuity elements are met." *Id.* (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "The 'continuity' requirement generally requires proof that the predicate acts extended over a closed period of at least a year." *Webster Industries, Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2nd 821, 850 (N.D. Iowa 2004)(citing *Handeen,* 112 F.3d at 1353).

Burchfield maintains the products labelled rust inhibitor and acrylic nail adhesive which he purchased, beginning in March of 2020, on Alibaba's website did not work as described. He indicates the website ceased selling the product or products in April of 2021. In short, the entire case centers on Burchfield's unspecified number of purchases of the allegedly defective products between March of 2020 and April of 2021. While he maintains the product consisted of isopropylbenzylamine which he describes as a by-product of the pharmaceutical production of methamphetamine, he has not alleged this by-product is itself a scheduled controlled substance or listed chemical under either Federal or State law. Burchfield maintains the DEA should never have described isopropylbenzylamine as being legal under federal law and believes the substance

should be illegal; however, he has not alleged isopropylbenzylamine is in fact illegal under Federal or State law or has any of the properties of methamphetamine such as its production of euphoria or its acting as a stimulant. His remaining allegations are based on his extrapolation from the fact that the website carried various other items which he has not alleged were unlawful to sell. This falls far short of alleging the existence of a pattern of racketeering activity. "If the pattern requirement has any force whatsoever, it is to prevent ordinary commercial fraud from being transformed into a federal RICO claim." *Menasco, Inc., v. Wasserman,* 886 F.2d 681, 685 (4th Cir. 1989).

In sum, the RICO fails because Burchfield has not sufficiently alleged the existence of an enterprise; the predicate acts, other than mail fraud, he relies on are insufficiently pled; and he has not sufficiently alleged the existence of a pattern of racketeering activity.

**B. Alien Tort Statute ("ATS")**

The ATS, 28 U.S.C. § 1350 provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." The Act was designed to ensure adequate remedies for foreign citizens. *Jesner v. Arab Bank, PLC,* ___ U.S. ___, 138 S. Ct. 1386, 1398 (2018). "The ATS is 'strictly jurisdictional' and does not by its own terms provide or delineate the definition of a cause of action for violation of international law." *Id.* Although referenced by Burchfield, this Act has no application because he is not an alien.

### C. Anti-Terrorism Act ("ATA")[3]

The ATA provides a civil remedy for "[a]ny national of the United States injured in his or her person, property, or business by an act of international terrorism . . . may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333(a). Section 2333(d) provides that aiding and abetting liability exists:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designation as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

*Id.*

The term international terrorism is defined in 18 U.S.C. § 2331(1) and means activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> (B) appear to be intended—
>
> > (i) to intimidate or coerce a civilian population;
> > (ii) to influence the policy of a government by intimidation or coercion; or
> > (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the person they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

---

[3] Burchfield also alleges violation of the Anti-Terrorism Clarification Act of 2018, Pub. L. No. 115-253. However, this Act merely amended portions of 18 U.S.C. §§ 2331, 2333, & 2334.

*Id.*

"To qualify as international terrorism, the . . . acts must satisfy each of the criteria contained in § 2331(1)." *Gonzalez v. Google LLC,* 2 F.4th 871, 900 (9th Cir. 2021). A mass shooting at a Florida night club was held not to be an act of international terrorism giving rise to civil liability. *Colon v. Twitter, Inc.,* 14 F.4th 1213 (11th Cir. 2021). Similarly, giving money to a group which then sponsored a terroristic act did not constitute an act of international terrorism giving rise to civil liability when the donor had no knowledge of the donee's intended criminal use of funds. *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,* 291 F.3d 1000 (7th Cir. 2002).

Clearly, the selling of a product that does not act as advertised does not fall within the definition of an act of international terrorism. Burchfield has not alleged that an act of international terrorism has been committed. He has not alleged the Defendants provided material support to any terrorist groups, provided services to a terrorism group, or in any other way was involved with a terrorist group. No plausible claim is stated.

**D. Terrorism Risk Insurance Act ("TRIA")**

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA") provides a terrorism exception to the jurisdictional immunity of a foreign state. 28 U.S.C. § 1605A. Specifically, it provides that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment or agency.

28 U.S.C. § 1605A(a)(1).

Subsection (c) provides that "[a] foreign state that is or was a state sponsor of terrorism . . . and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to—(1) a national of the United States . . . for personal injury or death," 28 U.S.C. § 1605A(c). The TRIA in turn provides allows the execution of judgments obtained under the FSIA against blocked assets of a terrorist party including an agency or instrumentality of that terrorist party. 28 U.S.C. § 1610; *Bank Markazi v. Peterson,* 578 U.S. 212, 217 (2016). Clearly, Burchfield's allegations state no plausible claim under the FSIA or the TRIA.

**E. Foreign Narcotics Kingpin Designation Act ("Kingpin Act")**

The Kingpin Act, 21 U.S.C. §§ 1901 *et seq.*, makes it the "policy of the United States to apply economic and other financial sanctions to significant foreign narcotics traffickers and their organizations worldwide to protect the national security, foreign policy, and economy of the United States from the threat" to the "national security, foreign policy and economy of the United States." 21 U.S.C. §§ 1901(b) and (a)(4). "The Kingpin Act authorizes the President to designate 'foreign person[s] that play a significant role in international narcotics trafficking ("SFNTs")." *Fares v. Smith,* 249 F. Supp. 3d 115, 118 (D.D.C. 2017)(citing 21 U.S.C. §§ 1903(b), 1907(7). The Office of Foreign Assets Control ("OFAC") has delegated authority to designate foreign persons "as materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of , a[n] [SFNT]," or "as playing a significant role in international narcotics trafficking." 21 U.S.C. §§ 1904(b)(3), 1904(b)(4). "Person designated pursuant to such authority are referred

to as 'specifically designated narcotics traffickers' ("SDNTs")." *Fares,* 249 F. Supp. 3d at 118 (citing 31 C.F.R. §§ 598.803, 598.314). Designation as an SDNT results in the freezing of assets including "all such property and interests in property within the United States, or within the possession or control of any United States person" and precluding any person from dealing in those assets. 21 U.S.C. §§ 1904(b), 1904(c).

Burchfield seeks to have the Defendants so designated. The Kingpin Act provides no civil cause of action[4] The Court has no authority to make such designation or to require the President or the OFAC to make such designation. No plausible claim is stated.

**F. The Controlled Substances Act ("CSA")**

The CSA, 21 U.S.C. § 801 *et seq.,* makes it unlawful for any person to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense" any controlled substance "[e]xcept as authorized by [21 US.C. §§ 801-904]." 21 U.S.C. § 841(a)(1). "The CSA establishes five 'schedules' of controlled substances differentiated by the scheduled drug's potential for abuse, its usefulness in medical treatment, and the potential consequences if abused. 21 U.S.C. § 812(b)." *Monson v. Drug Enforcement Admin.,* 522 F. Supp. 2d 1188, 1192 (D.N.D. 2007).

The term "controlled substance" is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). The authority to add a substance to a schedule lies with the Attorney General. 21 U.S.C. § 811(a); *see also Gonzales v. Oregon,* 546 U.S. 243, 258 (2006)("The Attorney General has

---

[4] A person so designated may challenge the designation by seeking administrative review before the agency, 31 C.F.R. § 501.807, or on procedural due process grounds, *see e.g., Fares v. Smith,* 901 F.3d 315 (D.D.C. 2018).

rulemaking power to fulfill his duties under the CSA"). Isopropylbenzylaminc is not a controlled substance under any of the five schedules. 21 U.S.C. § 812.

Burchfield maintains that isopropylbenzylamine has the same chemical formula, $C_{10}H_{15}N$, as methamphetamine. *See e.g.,* (ECF No. 15 at 1). In view of this, Burchfield contends the DEA should not have published a statement on its website that isopropylbenzylamine is a "federally legal" substance. *Id.* The CSA provides no enforceable federal substantive rights to Burchfield. *See e.g., Safe Streets Alliance v. Hickenlooper,* 859 F.3d 865, 897 (10th Cir. 2017)(no federal substantive rights to privately enforce the CSA).

**G. Anti-Preemption Provision of the CSA and the Supremacy Clause**

Section 903 provides as follows:

> No provision of this subchapter shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the States, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903.

Burchfield contends the statement published on the DEA website interferes with laws passed by the General Assembly of Arkansas regarding methamphetamine because it has the same chemical formula as isopropylbenzylamine. Burchfield maintains this is in violation of § 903 and the Supremacy Clause. He asserts this creates a public nuisance by allowing the other Defendants to bypass the CSA. However, Burchfield has not identified any specific provision of Arkansas law or the CSA that the DEA statement allegedly preempts; nor does Burchfield allege that the substance isopropylbenzylamine has been made unlawful under Arkansas drug laws.

With respect to the Supremacy Clause, the Supreme Court has held that "[t]he Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 325 (2015)(cleaned up). Next, the question is whether § 903 creates "new federal substantive rights or incorporates a private citizen's existing substantive rights, elevating them for federal protection." *Safe Streets,* 859 F.3d at 903. The Supreme Court has stated that

> [t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class. For a statute to create such private rights, its text muse be phrased in terms of the persons benefited.

*Gonzaga Univ. v. Doe,* 536 U.S. 273, 283-84 (2002).

"Where a federal statute 'simply does not create substantive rights,' the Supreme Court has explained that it is 'unnecessary to address [any] remaining issues' about a private citizen's ability to enforce that statute or obtain relief." *Safe Streets,* 859 F.3d at 903 (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 11 (1981)). A private citizen may not enforce the CSA. *Id.* at 904. Burchfield cannot bring his claim about the DEA statement or the non-listing of isopropylbenzylamine as a scheduled drug under the Supremacy Clause or § 903. No plausible claim is stated.

**H. Supplemental State Law Claims**

Burchfield has alleged state law claims of theft, unjust enrichment, and violation of the Online Marketplace Consumer Inform Act, Ark. Code Ann. 4-119-101 *et seq.* Pursuant to 28 U.S.C. § 1367(c)(3) the Court may decline to exercise supplemental jurisdiction over state law claim when it has dismissed all claims over which it has original jurisdiction. As all federal claims

will be dismissed prior to the issuance of service of process, the Court declines to exercise supplement jurisdiction in accordance with the provisions of § 1367(c)(3).

## IV. CONCLUSION

For these reasons, it is recommended that:

(1) all Burchfield's federal claims be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b)(1);

(2) the Court decline to exercise jurisdiction over the supplemental state law claims under 28 U.S.C. § 1367(c)(3); and

(3) the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of May 2022.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

print this page 中文版本

# Trade Assurance Purchase Contract

## (this "Contract")

Order No. : 91906090501027582

Version : 20210428003656

Date : 2021-06-01

Seller's Registered Company Name : Zichang New Materials (shandong) Co., Ltd.

Seller's Registered Company Address : Room A2-907, Xinyuanxin Center, Huaxin Road,Jinan,Shandong,CN

Email : sweety@sdzcchemical.com

Buyer's Registered Company Name/Contact Name : Burchfield Sales and Consulting LLC

Buyer's Registered Company Address/Shipping Address : 121 2nd st Apt A Hot Springs, AR 71913,Hot Springs,Arkansas,US

Email : burchfieldbradley123@gmail.com

## Important Conditions

By logging onto the Alibaba.com international platform, and clicking and agreeing to this Contract, both Buyer and Seller acknowledge, agree and confirm to be bound by the terms and conditions of this Contract and the applicable " Trade Assurance Services Rules ", including in particular those terms which are in bold and underlined. Unless otherwise defined herein, capitalized terms used in this Contract shall have the same meaning as those defined in the applicable " Trade Assurance Services Rules ".

## Contract Terms

Seller agrees to provide Trade Assurance Services to Buyer pursuant to this Contract. Seller hereby agrees to sell, and Buyer agrees to purchase, the products of Seller under the terms and conditions set forth in this Contract. Each of Seller and Buyer represents and warrants that it has obtained all necessary rights and authorizations to sell (in the case of Seller) or purchase (in the case of Buyer) the products respectively pursuant to this Contract.

### 1. Trade Terms

Trade Terms (Incoterms 2010) :EXW

## 2. Products

| No. | Product Name | Product Description and Specifications | Product SKU | Quantity | Unit | Unit Price | Contract Sum |
|---|---|---|---|---|---|---|---|
| 1 | factory N-Isopropylbenzylamine CAS 102-97-6 | | | 1.00 | Kilograms | USD 615.00 | USD 615.00 |

| | | | |
|---|---|---|---|
| Discount (if any): | USD 0.00 | Shipping Fee: | USD 50.00 |
| | | Total Amount: | USD 715.00 |

attachment files:

## 3. Delivery Terms

| | |
|---|---|
| 3.1 Shipping Address: | Bradley Burchfield +1 8706174081, Burchfield Sales and Consulting LLC, 6834 Cantrell Road Suite 210 little rock Arkansas 72207, 4 mile corner, Arkansas, 72207, United States of America |
| 3.2 Transportation Method: | Express |
| 3.3 Shipping Fee: | The shipping fee for this Contract is USD 50.00 |
| 3.4 Insurance charges: | The insurance charges for this Contract is USD 50.00 |
| 3.5 Shipment Date* :*Shipment Date refers to such date as indicated for completion of the shipping out of Products at the Port/Place of Loading or pickup of the express delivery of the Products | Seller should ship out Products at the designated Port/Place of Loading within 7 calendar day(s) after receiving the Deposit. |
| 3.6 Identification of Actual Date of Shipment: | Unless otherwise mutually agreed by the Buyer and Seller, for the purposes of the Trade Assurance Terms of this Contract, the date of shipment according to the records of the Alibaba.com transaction system, except where Seller provides original |

| | |
|---|---|
| | conclusive information on date of shipment to the contrary (in which case such information shall prevail). |
| 3.7 Port / Place of Destination Tips: | Ports / Places of Destination in Iran, North Korea, Syria, Cuba, Sudan, Egypt and the Crimea region are not currently covered by Trade Assurance. |

## 4. Payment Terms

| | |
|---|---|
| 4.1Total Amount: | The Total Amount for this Contract is USD 715.00 |
| 4.2 Deposit before Shipment (if applicable): | The Deposit (if applicable) before shipment for this Contract is USD 715.00 |
| 4.3 Discount: | The Discount for this Contract is USD 0.00 |
| 4.4 Remaining Balance(if applicable): | The Remaining Balance (if applicable) to this Contract shall be USD 0.00. Seller retains all ownership to the Product before Buyer completes payment of the Balance Amount (if applicable) under this Contract unless otherwise agreed between the Seller and Buyer, in which case Seller and Buyer shall act accordingly to such alternative arrangements. |
| 4.5 Payment Method : | Remittance to be made through those Payment Methods supported by Alibaba.com to the designated Beneficiary Bank Account under this Contract. |
| 4.6 Deadline of Payment of Deposit by Buyer (if applicable): | Buyer must remit the Deposit (if applicable) to the Beneficiary Bank Account set forth in this Contract within 15 days (with the 15th day inclusive) from the date both Seller and Buyer have executed this Contract and before shipment, otherwise Seller shall have the right to unilaterally terminate this Contract. |
| 4.7Deadline for paying Remaining Balance by Buyer(if applicable): | Unless otherwise mutually agreed between Seller and Buyer, Buyer shall pay the full amount of the Remaining Balance (if applicable) upon receiving the copy of bill of lading (or other delivery voucher). |
| 4.8 Bank Charges : | Buyer shall bear any and all relevant bank charges. |

## 5. Liquidated Damages

5.1 Unless otherwise provided in this Contract, or unless Buyer and Seller have agreed otherwise, Buyer's unilateral termination of this Contract without cause and/or failure to pay the Remaining Balance in accordance with this Contract shall constitute a material breach of this Contract. If both Buyer and Seller have separately agreed on a sum to be paid as liquidated damages pursuant to the breach, such sum shall be remitted to the Beneficiary Bank Account under this Contract or deducted directly from any and all Payment that has been received by Seller.

5.2 Unless otherwise agreed by both Buyer and Seller, if the events of breach under the "Trade Assurance Terms" section (Section 6) occurs after Buyer pays the Deposit (if applicable) in full, this Contract shall be terminated accordingly and Seller shall bear the relevant liability as agreed.

## 6. Trade Assurance Terms

6.1 Trade Assurance Amount:

The Trade Assurance Amount for this Contract is USD 715.00

Trade Assurance Amount (as defined in the applicable " Trade Assurance Services Rules ")

| | |
|---|---|
| 6.2 Trade Assurance Scope: | Trade Assurance until 30 days (inclusive of the 30th day) after the Date of the Con firmed Receipt of the Products<br><br>*See Section 6.3 for detailed terms and conditions. |
| 6.3 Trade Assurance Obligations: | 6.3.1 Seller agrees to be liable for Trade Assurance Obligations if the Seller commi ts any of the following breaches:<br><br>(1)Shipping out Products later than Shipment Date in section 3.5 or did not ship o ut the Products at all; or<br><br>(2)Failing to: (i) deliver Products in compliance with the Product Description and S pecifications, or (ii) provide valid documentation in support of change of ownershi p of the Products to the Buyer, or (iii) provide valid documentation including but no t limited to corresponding invoice (or certification) in support of delivery, or (iv) co mmits any other material breach of this Contract, either (i) to (iv) scenario resultin g in a material damage to the value of the Products or the commercial objective k nown or should be known to both Seller and Buyer becoming unachievable.<br><br>6.3.2 Upon the occurrence of (1) or (2) of above 6.3.1, Seller shall assume the foll owing Trade Assurance Obligations:<br><br>Seller agrees to fully refund the Contract Sum received by the Seller or an amount mutually agreed upon by the Buyer and Seller (in accordance with the system reco rds of the Complaints Platform)， or other amount as designated by Alibaba.com (Partial refund shall be conditional upon the Buyer's acceptance of the Seller's act of breach of contract).<br><br>6.3.3 If Buyer has not paid the Remaining Balance in accordance with the terms of this Contract, the Seller's Trade Assurance Obligations under the Contract shall be corresponded to payment of the purchase price received by the Seller. |
| 6.4 Refund on behalf of the Seller : | If Buyer submits a request to Alibaba.com for Dispute Determination in accordanc e with the terms of applicable " Trade Assurance Services Rules" during the corres ponding Claim Period, and the determination of Alibaba.com confirms that Seller h as committed a breach of any of the conditions in sections 6.3.1(1), (2) or (3), the n Buyer may receive refund to be paid for and on behalf of the Seller in accordanc |

e with the terms and conditions of the applicable " Trade Assurance Services Rules " subject to the Trade Assurance Amount specified in this Contract. When the Trade Assurance Amount is zero (0) as agreed under section 6.1, Seller shall itself refund payment to Buyer.

6.5 Claim Period:

Buyer must submit a request to Alibaba.com for Dispute Determination (section 6.6) within the applicable Claim Period set out below, failing which, Alibaba.com shall have no obligation to make any refunds for and on behalf of Seller (unless Alibaba.com in its sole discretion decides to extend the Claim Period).

6.5.1 Where the Buyer complains the Seller of breaches sections 6.3.1 (1) and/or (2), the Buyer shall lodge a dispute claim no later than 30 days (inclusive of the 30th day) after the Date of Confirmed Receipt of the Products. 6.5.2 Date of Confirmed Receipt of the Products means either (1) the day when the Buyer clicks "Confirm" on the order system to confirm the receipt of the Products or (2) if the buyer did not click "Confirm" in the order system, then depending on which shipment method, should be no later than the following days after the Actual Date of Shipment (i) by express: 15 days; (ii) by air freight: 30 days; (iii) by land transportation, sea freight or postal parcel: 60 days; (iv) from overseas warehouse: 10 days. For the avoidance of doubt, the system's default Date of Confirmed Receipt shall only apply upon (i) receipt of Products or (ii) where there is no logistics status available. Where the logistics status states that the Products are still being delivered, the Date of Confirmed Receipt shall only be the day when the Buyer clicks "Confirm" on the order system to confirm the receipt of the Products. Where there is only partial shipment of the Products, the Claim Period shall commence on the Shipment Date of the final consignment of the remaining Products.

6.6 Dispute Determination:

If Seller refused to fulfill the "Trade Assurance Terms", Buyer may submit a request to Alibaba.com for dispute determination in accordance with the terms of " Trade Assurance Services Rules ". Each of the Buyer and Seller agrees to abide by the terms and conditions of the " Trade Assurance Services Rules " (including those versions updated from time to time).

## 7. Insurance

Unless otherwise agreed by both Buyer and Seller, if the Trade Terms selected for this Contract is Free on Board (FOB) or Cost and Freight (CFR), then insurance is to be effected by Buyer at Buyer's cost. Alternatively if the Trade Terms selected for this Contract is Cost, Insurance and Freight (CIF), then Seller must obtain insurance for the shipment at Seller's cost.

## 8. Product Inspection

If Buyer and Seller agreed to arrange for the products go through a product inspection process, the parties may agree on the terms of the inspection, such as method, inspection institution, fees, and etc., by way of a supplemental

agreement. If both Parties have agreed "Inspection & Logistics Service Trade Assurance", Buyer shall also be entitled to have the Products inspected before shipping (and Seller shall provide all necessary assistance to complete the relevant inspection so that the shipping of Products remains unaffected), so that Buyer can benefit from information relating to the inspection and shipping of the Products.

## 9. Force Majeure

If either Buyer or Seller is unable to perform or delayed in performing its obligations under this Contract due to events beyond its reasonable control (including but not limited to war, industry actions, acts of God, breakdown of network or public utilities), the party encountering such events shall not be liable thereto.

## 10. Termination

10.1 Either Buyer or Seller may terminate this Contract without liability to the other party if the Contract is terminated a s follows:

**a) Seller terminates this Contract before Buyer has paid the Deposit or Total Amount (as applicable);**

**b) Seller terminates this Contract after returning Deposit (if applicable) to Buyer, and if other sums have also bee n received by Seller, such other sums received as well, in accordance with this Contract; or**

**c) This Contract is terminated in accordance with other terms agreed by both parties in writing.**

10.2 Unless otherwise expressly provided in this Contract, neither Buyer nor Seller may unilaterally terminate this Cont ract.

10.3 Upon termination of this Contract, the Seller and Buyer shall agree in writing on such other terms not explicitly set out in this Contract (such as, but not limited to, any arrangements relating to return of Products).

## 11. Tax

Unless otherwise agreed, all amounts required to be paid by Seller or Alibaba.com under the "Trade Assurance Services Rules" do not include any taxes, duties or other assessments levied or based upon such amounts. Buyer shall be responsible for all such taxes, duties, other assessments due under this Agreement and on all amounts payable hereunder. Taxes will be added to the amounts payable by Buyer to Seller or Alibaba.com (as the case may be) as

applicable and as required by law such that the net amount actually received by Seller or Alibaba.com (as the case may be) equals the full amount of the payment due hereunder. For greater certainty, Taxes will not be added to the amounts payable by Buyer to Seller or Alibaba.com (as the case may be) where Buyer has provided with evidence to Seller's or Alibaba.com 's (as the case may be) satisfaction of a lawful and applicable exemption for such Taxes.

If Buyer is or may be required under any law or regulation of any governmental entity or authority, domestic or foreign, to withhold or deduct any withholding tax from any amount due to Seller or Alibaba.com pursuant to this Agreement, the amount payable by Buyer shall be increased to the extent necessary to ensure that after making such deduction or withholding, Seller or Alibaba.com (as the case may be) receives and retains a net sum equal to the sum it would have received but for such deduction or withholding being required. Buyer shall promptly deliver to Seller or Alibaba.com (as the case may be) all receipts and/or certificates or other proof evidencing the amounts (if any) paid in respect of any such deduction or withholding. In determining whether and to what extent a deduction or withholding of tax is required by law, the Parties shall cooperate with each other and with Alibaba.com and use their reasonable efforts to apply for any exemption, and shall bear their respective cost and expenses in this regard.

The Buyer and the Seller shall each be responsible for the direct tax liability imposed on its own net income, unless otherwise agreed between the Buyer and the Seller.
Buyer shall be responsible for the payment of all other taxes including the local levies imposed by any relevant government authority in connection with Alibaba.com's provision of any services relating to this Contract. Buyer agrees to execute any and all documents with the Seller or such party as the Seller designated for the benefit of Alibaba.com to give effect to this provision.

If Seller or Buyer under this transaction is subject to any tax (such as US State Sales Tax) obligation or liability under any law or regulation of any local or non-local taxation authority of any jurisdiction, Seller or Buyer shall independently assume such obligation or liability, and Alibaba.com does not assume any tax obligation or liability attributable to Seller or Buyer. For the overseas warehouse goods, Seller shall be responsible independently for the processing fee and related taxes (including but not limited to customs duties) in relation to the import, customs clearance, logistics of goods. Alibaba.com does not assume any obligation or liability for the responsibility and expense for the Seller's goods.

"Taxes" refer to all federal, state, provincial, territorial, county, municipal, local, or foreign taxes and fees, including but not limited to sales, use, license, excise, goods and services, value added, stamp or transfer taxes, duties, imposts, levies, assessments, tariffs, fees, charges or withholdings of any nature whatsoever levied, imposed, assessed or collected by a taxation authority together with all interest, penalties, fines, or other additional amounts imposed in respect thereof, but for greater certainty excludes any of the foregoing which are (i) based on gross or net income, (ii) franchise tax, or (iii) property, personal property, or rental taxes (collectively referred to as "Excluded Taxes"). Each party shall be responsible for any and all Excluded Taxes that it is liable for under applicable law.

"Taxation Authority" refers to any government, state, municipality or any local, provincial, state or other fiscal, customs, excise or taxing authority, body or official anywhere in the world with responsibility for, and competency to, impose, collect, audit, assess, administer or levy any Taxes or make any decision or ruling in respect of any Taxes.

## 12. Other conventions

| | |
|---|---|
| 12.1 Limitation of Liability: | TO THE MAXIMUM EXTENT PERMITTED BY LAW, NEITHER PARTY SHALL BE LIAB LE TO THE OTHER PARTY FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL OR INC IDENTAL DAMAGES (INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF PROFITS OR REVENUE, INTERRUPTION OF BUSINESS, LOSS OF BUSINESS INFOR MATION OR DATA, ETC) ARISING IN CONNECTION WITH THIS CONTRACT, EVEN I F ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR EVEN IF THE POSSIBILIT Y OF SUCH DAMAGES IS FORESEEABLE. TO THE MAXIMUM EXTENT PERMITTED BY LAW, EITHER PARTY'S AGGREGATE LIABILITY UNDER THIS CONTRACT SHALL NOT EXCEED THE TOTAL ORDER AMOUNT OF THIS CONTRACT. |
| 12.2 Governing Law: | This Contract shall be governed by and construed in accordance with the laws of t he People's Republic of China without recourse to its conflict of laws principles. |

| | |
|---|---|
| 12.3 Disputes : | Any dispute between both parties that arise out of this Contract (the "Dispute") shall first be resolved amicably by negotiation. The parties agree to submit a request to Alibaba.com for dispute determination in the event that both parties fail to reach a settlement on the Dispute. If either party does not agree to the final determination or decision made by Alibaba.com in connection with the Dispute, the Dispute may be referred to and resolved by arbitration at the Shenzhen Court of International Arbitration, and the party should inform alibaba.com. |
| 12.4 Notice : | Any and all notice and other communications in respect of this Contract shall be in writing in English and sent by email, or international express courier to the address of the other party stated in this Contract. Any changes to the address shall be notified to the other party within five (5) calendar days from the date the change has taken effect. Unless otherwise provided in this Contract or in the " Trade Assurance Services Rules ", any notice given pursuant to this clause shall be deemed effective if: i) delivered by email, when the email is successfully sent; ii) if sent by international express courier, when the courier has been received by the recipient. |
| 12.5 Contract Term : | This Contract is established from the time Buyer has clicked "confirm Contract" on the Alibaba.com.<br>This Contract shall take effect from the time Buyer had remitted the Deposit or the Total Amount (as applicable) to Seller in accordance with Contract. |
| 12.6 Electronic Order : | This Contract constitutes an electronic Contract between Seller and Buyer and shall have the same validity and binding effect as if the Contract is executed by both parties on paper. |
| 12.7 Export and Import Agent : | Seller may agree separately on the rights and obligations for its import and export agent in fulfilling the relevant obligations pursuant to this Contract. Seller shall be liable for any acts committed by its import and export agent for any obligations that are performed by the agent for and on behalf of Seller in connection with this Contract. |
| 12.8 Other Provisions : | Neither party may assign this Contract, in whole or in part, to any third party. In the event of any inconsistency between the Chinese and English versions of this Contract, the English version shall prevail. |
| 12.9 Remarks : | |

## The end of text

# SMALL CLAIMS COMPLAINT

Pulaski County District Court
3001 West Roosevelt Road
Little Rock, Arkansas 72204
Phone: 340-6830 Fax: 340-6899

CASE # PCSC-26-129

PLAINTIFF Bradley Burchfield

ADDRESS 5420 Kavanaugh Blvd #7927 (HM) PHONE 479-223-0038 (WK)

CITY Little Rock STATE AR ZIP 72217

VS.

DEFENDANT - 1 Alibaba.com Singapore E-Commerce Private Limited

EMPLOYMENT

ADDRESS 51 Bras Basah Rd #01-21 HOME ADDRESS

CITY Lazada One, Singapore 189554 STATE CITY STATE

ZIP PHONE N/A ZIP PHONE

DEFENDANT - 2 Alibaba.com US E-Commerce Corp.

EMPLOYMENT

ADDRESS 525 Almanor Ave. Suite 400 HOME ADDRESS

CITY Sunnyvale STATE CA CITY STATE

ZIP 94085 PHONE 844-292-4741 ZIP PHONE

AGENT OF SERVICE FOR CORPORATION (DEFENDANT'S) A Incorporating Services, Ltd.

ADDRESS 7801 Folsom Blvd. Suite 202 CITY Sacramento STATE CA ZIP 95826

---

AMOUNT OF RELIEF CLAIMED $ 5,000.00 DATE CLAIM AROSE 6/1/2021

FACTS EXPLAINING THIS CLAIM I attempted to purchase a product from Alibaba.com and it was never delivered see attached receipt. I tried to resolve it through their dispute resolution process and to date it has not been resolved.

Bradley Burchfield
SIGNATURE OF PLAINTIFF

**IMPORTANT: IF YOU FAIL TO FILE A WRITTEN ANSWER WITHIN 30 DAYS FROM THE DATE YOU RECEIVE THIS COMPLAINT, JUDGMENT WILL BE ENTERED AGAINST YOU FOR THE AMOUNT OF THE CLAIM FILED PLUS THE COURT COSTS.**

CLAIM AMOUNT $ 5000.00
FILING FEES $ 65.00
SERVICE FEES $ 75.52 SERVER CM
TOTAL $ 5140.52

# S ALL CLAIMS COMPLAI T

Pulaski County District Court
3001 West Roosevelt Road
Little Rock, Arkansas 72204
Phone: 340-6830 Fax: 340-6899

CASE # PCSC-26-189

PLAINTIFF Bradley Burchfield

ADDRESS 5420 Kavanaugh Blvd #7927 (HM) PHONE 479-223-0038 (WK)

CITY Little Rock STATE AR ZIP 72217

VS.

DEFENDANT - 3 Alibaba Group Holding Limited

EMPLOYMENT

ADDRESS 26/F Tower One Times Square 1 Matheson St. Causeway Bay HOME ADDRESS

CITY Hong Kong, China STATE CITY STATE

ZIP PHONE 852-2215-5100 ZIP PHONE

DEFENDANT - 4 Zichang New Materials (SHANDONG) Co., LTD;

EMPLOYMENT

ADDRESS Room A2-907, Xinyuanxin Center HOME ADDRESS

CITY Huaxin Road, Jinan, STATE Shandong, China CITY STATE

ZIP PHONE N/A ZIP PHONE

AGENT OF SERVICE FOR CORPORATION (DEFENDANT'S) Incorporating Services Ltd.

ADDRESS 7801 Folsom Blvd Ste 202 CITY Sacramento STATE CA ZIP 95826

---

AMOUNT OF RELIEF CLAIMED $ 5,000.00 DATE CLAIM AROSE 6/1/2021

FACTS EXPLAINING THIS CLAIM I attempted to purchase a product from Alibaba.com and it was never delivered, see attached receipt. I tried to resolve it through their dispute resolution process and to date it has not been resolved.

Bradley Burchfield
SIGNATURE OF PLAINTIFF

**IMPORTANT: IF YOU FAIL TO FILE A WRITTEN ANSWER WITHIN 30 DAYS FROM THE DATE YOU RECEIVE THIS COMPLAINT, JUDGMENT WILL BE ENTERED AGAINST YOU FOR THE AMOUNT OF THE CLAIM FILED PLUS THE COURT COSTS.**

CLAIM AMOUNT $ 5000.00
FILING FEES $ 65.00
SERVICE FEES $ 75.52 SERVER CM
TOTAL $ 5140.52

# Receipt

Receipt number: #91906090501027582

Receipt date: 10:41 AM, May 29th, 2026 (PDT)

Marketplace Operator:

**Alibaba.com Singapore E-Commerce Private Limited**

51 Bras Basah Road, #01-21 Lazada One, Singapore 189554

Sold by:

**Zichang New Materials (shandong) Co., Ltd.**

Room A2-907, Xinyuanxin Center, Huaxin Road, Jinan, Shandong, CN

Buyer's company address:

**Burchfield Sales and Consulting LLC**

121 2nd st Apt A Hot Springs, AR 71913, Hot Springs, Arkansas, US

Ship to:

**Bradley Burchfield**

Bradley Burchfield +1 8706174081, Burchfield Sales and Consulting LLC, 6834 Cantrell Road Suite 210 little rock Arkansas 72207, 4 mile corner, Arkansas, 72207, United States of America

Order number: **#91906090501027582**

Order date: **8:55 PM, Jun 1st, 2021 (PDT)**

**Order details**

| Item description | Qty | Unit price (excl. tax) | Total amount (excl. tax) |
|---|---|---|---|
| factory N-Isopropylbenzylamine CAS 102-97-6 | 1.00 | USD 615.0000 | USD 615.00 |
| | Subtotal | | USD 615.00 |
| | Shipping fee | | USD 50.00 |
| | Logistics insurance fee | | USD 50.00 |
| | **Order total** | | **USD 715.00** |

| **Payment information** | |
|---|---|
| Order total | USD 715.00 |
| Payment processing fee | USD 21.38 |
| **Amount paid** | **USD 736.38** |
| Paid on June 01, 2021 (Credit/debit card) | USD 736.38 |

**Notice:**

- Alibaba.com reserves the right to determine and conclude payment processing fee in this receipt.
- This is a computer-generated document and no signature is required.
- You alone shall bear any adverse consequences arising from tampering with the content for purposes other than intended.
- This receipt is not a tax invoice. You may download a tax invoice after your order is completed.

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 20 2026
TAMMY H. DOWNS, CLERK
By: ____ DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD PLAINTIFF
v. No. 4:26-cv-00827-DPM-JJV
ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al. DEFENDANTS

**PLAINTIFF'S MOTION TO CLARIFY SCOPE OF REMOVAL AND SUBJECT-MATTER JURISDICTION, WITH CONDITIONAL REQUEST FOR SEVERANCE AND REMAND**

1. Plaintiff requests an order clarifying whether all claims against all named defendants in 60CV-26-9730 remain within this removed action, including defendants who have not appeared or whose service remains unresolved.

2. ECF 1 invokes diversity jurisdiction under 28 U.S.C. § 1332. Paragraphs 4-9 allege citizenship for Plaintiff and all four named defendants. Paragraph 10 relies on Plaintiff's August 6, 2026 $3 million settlement demand. Plaintiff acknowledges those allegations and does not assert that the sellers were omitted from the removed action.

3. Plaintiff does not seek remand for an untimely procedural objection concerning consent to removal. The request is limited to clarification and any subject-matter jurisdiction issue the Court identifies from the existing record. Plaintiff does not contend that the initial small-claims filing alone defeats the amount-in-controversy allegations at removal.

4. Plaintiff understands that lack of representation, nonappearance, and incomplete service do not themselves defeat subject-matter jurisdiction or leave part of an otherwise removed action in state court. The requested clarification will guide further service and case-management efforts.

5. Plaintiff asks the Court to identify whether the claims concerning nonappearing foreign defendants are retained under original diversity jurisdiction or another jurisdictional basis. If the existing record resolves that question, Plaintiff requests a determination on that record;

otherwise, Plaintiff requests narrowly directed supplemental jurisdictional information rather than general merits discovery.

6. Only if the Court identifies a jurisdictional deficiency, Plaintiff requests the legally appropriate remand under 28 U.S.C. § 1447(c). If a discrete claim may lawfully be severed under Rule 21 and separately remanded, Plaintiff requests that relief only upon identification of the claim and an independent legal basis for remand. Plaintiff does not request severance merely to manufacture a jurisdictional deficiency.

7. If jurisdiction covers the entire action, Plaintiff alternatively requests confirmation that further service proceedings concerning the named nonappearing defendants belong in this Court, subject to the Court's orders. No ruling on the merits, default, or personal jurisdiction is requested by this motion.

WHEREFORE, Plaintiff requests clarification of the scope of removal and the jurisdictional basis for retained claims; a narrowly focused jurisdictional submission only if necessary; and severance or remand only to the extent the Court finds a lawful basis. Plaintiff requests no withdrawal of pending service motions, no dismissal of claims, and no alteration of existing deadlines through the mere filing of this motion.

Plaintiff requests that any amount-in-controversy determination identify the operative state pleading at removal and evaluate the August 6 demand in its complete context. Exactly $75,000 does not exceed the statutory threshold, but Plaintiff does not contend that a stated demand necessarily limits recoverable relief. Plaintiff requests consideration of the state amendment and transfer orders and the complete demand, if necessary to resolve jurisdiction. Plaintiff does not represent that the $3 million demand concerned another lawsuit or a global settlement, and does not seek to reduce the amount after removal to defeat jurisdiction.

The requested relief is limited to this action. Plaintiff does not request dismissal, withdrawal, amendment, or adjudication of claims or parties in No. 4:26-cv-00611-DPM-JJV. Plaintiff does not concede that overlapping transactions or alleged relationships are factually unrelated. If the Court considers severance, Plaintiff requests identification of the exact claims affected and an opportunity to address duplication, prejudice, service, and limitations consequences before entry of the order.

Respectfully submitted,
Date: 10/20/26, 2026 Signature: Bradley Burchfield
Bradley Burchfield, Plaintiff pro se
5420 Kavanaugh Blvd. #7927, Little Rock, Arkansas 72217
479-223-0038 | burchfieldbradley123@gmail.com

Case 4:26-cv-00827-DPM-JJV Document 44 Filed 10/20/26 Page 4 of 4

## CERTIFICATE OF SERVICE

I certify that on October 20, 2026, I electronically filed the foregoing motion and any accompanying papers actually submitted with the Clerk of the United States District Court for the Eastern District of Arkansas using the CM/ECF system. The system transmitted a Notice of Electronic Filing to the registered counsel of record listed as electronic recipients on that notice, thereby serving those recipients.

This certificate is limited to electronic service on the recipients identified in the Notice of Electronic Filing. It does not certify service of original process or electronic service on any unregistered party.

Signature: Bradley Burchfield

Bradley Burchfield, Plaintiff pro se
5420 Kavanaugh Blvd. #7927
Little Rock, Arkansas 72217
479-223-0038
burchfieldbradley123@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 20 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

BRADLEY BURCHFIELD PLAINTIFF
v. No. 4:26-cv-00827-DPM-JJV
ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al. DEFENDANTS

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION**

**I. Scope of removal and the remaining question**

The notice removes the civil action, not merely the removing defendants' portion. Under 28 U.S.C. § 1446(d), the state court proceeds no further unless and until remand. Section 1447(a) permits the federal court to bring before it proper parties whether previously served or not. The requested clarification concerns where pending claims and further service belong; it does not presume a partial remand.

Alibaba.com Singapore was not identified as a removing defendant. ECF 1 paragraph 13 separately asserts that Singapore had not been properly served and cites Gong Declaration paragraphs 3-4, including a statement that Singapore would consent if service were deemed proper. Plaintiff distinguishes those assertions from Singapore itself filing the notice. Jurisdictional allegations by the removing defendants do not themselves establish an appearance, attorney-client relationship, or merits defense for another defendant. Any authorized consent by Singapore must be evaluated separately from Zichang's conduct. This distinction does not establish that its claims remained in state court; the Court must distinguish removal of the action from joinder or consent by individual defendants.

**II. Diversity must be assessed on the actual record**

Section 1332(a) governs the amount in controversy and qualifying citizenship; § 1332(c)(1) addresses corporate citizenship. The notice in this case asserts diversity, including citizenship

allegations for the foreign defendants. Plaintiff identifies no presently established Arkansas citizenship for a named defendant. The Court may resolve this request from the existing allegations and supporting materials without ordering duplicative discovery.

In 00827, ECF 1 paragraphs 4-10 identify citizenship and the $3 million settlement demand. The Court should consider that record and the operative pleading rather than treating the former small-claims limit as conclusive. This brief does not assert that a settlement demand is categorically irrelevant.

**III. Procedural waiver differs from subject-matter jurisdiction**

Section 1447(c) imposes a 30-day period for remand motions based on defects other than subject-matter jurisdiction. It separately requires remand if subject-matter jurisdiction is lacking before final judgment. Plaintiff does not relabel a missing-consent objection as jurisdictional. Nonappearance and lack of counsel are not substitutes for a jurisdictional defect.

**IV. Severance and remand require distinct grounds**

Rule 21 permits severance of a claim against a party; it does not itself supply authority to remand. The common transaction and overlapping allegations may favor retention together. Plaintiff requests no finding that the claims are unrelated merely because service or representation differs.

Section 1441(c) addresses actions containing a federal-question claim together with specified claims outside original or supplemental jurisdiction, or made nonremovable by statute. The reviewed notice relies on diversity. Plaintiff therefore does not invoke § 1441(c) as an automatic route to sever and remand these defendants.

Likewise, § 1367(c) concerns declining supplemental jurisdiction; it does not authorize declining original diversity jurisdiction merely because state law governs. If all relevant claims are within

original jurisdiction, that provision does not supply the requested remand. Any conditional remand must rest on a ground the Court actually identifies, not the status of counsel.

**V. Requested disposition**

Plaintiff requests a concise order identifying the scope of the removed action and the jurisdictional basis for retaining the claims against the named nonappearing defendants. If a genuine deficiency appears, Plaintiff requests appropriately limited briefing and the relief required by § 1447(c), including severance only if independently justified. Otherwise, Plaintiff requests confirmation that service and case-management relief should be pursued here. This motion does not itself suspend any obligation or deadline.

**VI. Amount in controversy and the evidentiary record**

Section 1332(a) requires an amount exceeding $75,000, exclusive of interest and costs. Section 1446(c)(2) governs reliance on the pleaded amount and proof of a different jurisdictional amount. The Court should determine which pleading was operative when removal occurred; a motion for leave to amend does not by its title establish that leave was granted. Plaintiff requests consideration of the corresponding state orders and the full August 6 settlement communication rather than an unsupported assumption about its scope. If that demand values the claims in this action at $3 million, it substantially supports removal; Plaintiff does not contend otherwise. The removing party bears the burden of establishing the jurisdictional amount. Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009). Bell explains that, once the requisite amount is established by a preponderance, remand requires the plaintiff to establish to a legal certainty that recovery cannot exceed the jurisdictional minimum. Id. Plaintiff requests application of that standard to the existing record, with a limited supplemental submission only if the Court finds

the record insufficient. No post-removal reduction, waiver of damages, or binding damages stipulation is requested.

**VII. Preservation of claims and related litigation**

Plaintiff seeks no adjudication of the alleged Trade Assurance undertaking, seller conduct, agency, control, alter-ego relationship, or enterprise allegations. Procedural separation would not be a concession that any defendant acted independently. Statements about another entity in a removal notice are not, without more, a merits determination or an appearance on that entity's behalf. Plaintiff requests no declaration of liability or default through this motion.

The cases remain distinct. Plaintiff asks for no order changing the pleadings, parties, or claims in 00611 and makes no concession that shared transactions or alleged enterprise relationships are unrelated. A severance order should specify the precise claims affected. Plaintiff recognizes that this requested limitation cannot itself eliminate the possible preclusive effect of a later judgment or resolve a future objection to duplicative litigation.

Respectfully submitted,
Date: 10/20/26, 2026 Signature: Bradley Burchfield
Bradley Burchfield, Plaintiff pro se
5420 Kavanaugh Blvd. #7927, Little Rock, Arkansas 72217
479-223-0038 | burchfieldbradley123@gmail.com

## CERTIFICATE OF SERVICE

I certify that on October 20, 2026, I electronically filed the foregoing supporting brief and any accompanying papers actually submitted with the Clerk of the United States District Court for the Eastern District of Arkansas using the CM/ECF system. The system transmitted a Notice of Electronic Filing to the registered counsel of record listed as electronic recipients on that notice, thereby serving those recipients.

This certificate is limited to electronic service on the recipients identified in the Notice of Electronic Filing. It does not certify service of original process or electronic service on any unregistered party.

Signature: Bradley Burchfield

Bradley Burchfield, Plaintiff pro se
5420 Kavanaugh Blvd. #7927
Little Rock, Arkansas 72217
479-223-0038
burchfieldbradley123@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**Central Division**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA GROUP HOLDING LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00827-DPM-JJV |

**DEFENDANT ALIBABA GROUP HOLDING LIMITED'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Alibaba Group Holding Limited ("AGHL") files this motion to dismiss. For the reasons stated in more detail in the accompanying Brief in Support, the Court should dismiss AGHL from this breach-of-contract lawsuit because Plaintiff cannot satisfy his burden of establishing that this Court has personal jurisdiction over AGHL in this case. In the alternative, the Court should dismiss AGHL from this lawsuit based on: (a) res judicata principles; (b) the applicable statute of limitations; and/or (c) the lack of a contract between AGHL and Plaintiff.

Dated: October 29, 2026

Respectfully submitted,

McDANIEL WOLFF PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
1307 West 4th Street
Little Rock, AR 72201
(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

and

BALANCE LAW FIRM

B. Robert Liu (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp.*

CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2026, I electronically filed the foregoing Motion to Dismiss and the accompanying Brief in Support (and exhibits attached thereto) with the Clerk of the Court using the CM/ECF system. I further certify that, because Plaintiff is proceeding *pro se* and is not a registered CM/ECF participant, I served a true and correct copy of the aforementioned documents via United States First-Class Mail, postage prepaid, addressed to Plaintiff as follows:

Bradley Burchfield
5420 Kavanaugh Blvd. #7927
Little Rock, AR 72217

/s/ Brittany D. Webb
Brittany D. Webb, Ark. Bar No. 2023139

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**Central Division**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA GROUP HOLDING LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00827-DPM-JJV |

**DEFENDANT ALIBABA GROUP HOLDING**
**LIMITED'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Alibaba Group Holding Limited ("AGHL") asks the Court to dismiss AGHL from this lawsuit.

**PRELIMINARY STATEMENT**

This is a frivolous lawsuit by a *pro se* plaintiff—Bradley Burchfield—who is an ex-convict and frequent filer of lawsuits against various Alibaba defendants that repeatedly have been dismissed. This breach-of-contract lawsuit arises out of an alleged purchase or attempted purchase of a chemical product via Alibaba.com ("the Alibaba.com Platform") from a third-party seller located in China—Zichang New Materials (Shandong) Co. Ltd. ("Zichang")—that is a named defendant in this lawsuit. That transaction involved a contract between Burchfield Sales and Consulting LLC ("BSAC LLC")—***not*** Plaintiff—as the buyer and Zichang as the seller. AGHL was not a party to that contract.

This lawsuit is part of a years-long vendetta that Plaintiff has pursued against various companies (and individuals) allegedly associated with the Alibaba.com Platform by filing frivolous *pro se* lawsuits in this Court, the Western District of Arkansas, and the Northern District of California. As discussed below, Plaintiff voluntarily dismissed one of those lawsuits ***with prejudice*** and, in a filed stipulation signed by him, acknowledged that: (a) dismissal is appropriate because no viable claim exists; and (b) no compensation had been paid or promised to him.

Enough is enough; the Court should end Plaintiff's harassment campaign by granting this motion for the reasons discussed in more detail below. AGHL should be dismissed from this lawsuit because Plaintiff cannot satisfy his burden of establishing that this Court has personal jurisdiction over AGHL in this case (Section I below). In the alternative, the Court should dismiss AGHL from this lawsuit based on res judicata principles (Section II.A. below), the applicable statute of limitations (Section II.B. below), and/or the lack of a contract between AGHL and Plaintiff (Section II.C. below).

## ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff initially filed a small claims lawsuit in state court (Pulaski County District Court) against AGHL and three other defendants. The Complaint alleges that Plaintiff "attempted to purchase a product from Alibaba.com and it was never delivered, see attached receipt." Complaint at 1. The receipt attached to the Complaint ("the Receipt") shows that Defendant Zichang, which is located in China, was the seller. The Receipt also shows that BSAC LLC was the buyer. BSAC LLC is not named as a plaintiff in the Complaint and is not a party to this lawsuit. The Receipt shows the operator of the Alibaba.com marketplace as Alibaba.com Singapore E-Commerce Private Limited; the Complaint names that company as a defendant. The Receipt does not show that AGHL was a party to the purchase-sale contract between Zichang and BSAC LLC.

After Plaintiff filed a motion seeking transfer, this lawsuit was transferred to the Circuit Court of Pulaski County, Arkansas. Thereafter, this lawsuit was removed to this Court.

Before removal, Plaintiff did not serve the Summons and Complaint on AGHL. After removal, Plaintiff also did not effect service of process on AGHL. Nevertheless, to simplify the issues and avoid any disputes regarding service of process, AGHL responds to the Complaint by filing this motion to dismiss on other grounds.

This is not the first or second or even third time that Plaintiff has sued AGHL and other defendants allegedly associated with the Alibaba.com Platform. As discussed below, three RICO lawsuits that he filed to seek damages for the same purchase (or attempted purchase) at issue here were dismissed by this Court, the Western District of Arkansas, and the Northern District of California. *See infra* pages 9-11. Moreover, Plaintiff filed other federal court lawsuits that named as defendants various companies and/or individuals allegedly associated with the Alibaba.com Platform.[1]

## LEGAL STANDARDS GOVERNING *PRO SE* LAWSUITS

Although a *pro se* complaint should be construed liberally, it "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). A court presiding over a *pro se* lawsuit cannot "supply additional facts" or "construct a legal theory for

---

[1] In 2020, Plaintiff filed a lawsuit in the Western District of Arkansas (*Burchfield v. Jones, et al.*, No. 6:20-cv-06121) against numerous defendants, including President Donald Trump; Jeff Bezos; and Jack Ma, who was identified in the caption of that lawsuit as "owner Alibab.com [*sic*] and alibaba express." In 2020, Plaintiff filed a lawsuit in the Western District of Arkansas (*Burchfield v. McCormick, et al.*, No. 6:20-cv-06121) against numerous defendants, including President Donald Trump; "Members of the United States Congress"; and "Jak [*sic*] Ma," who was identified in the caption of that lawsuit as "Owner of Alibaba.com and Aliexpress.com." In 2021, Plaintiff filed a lawsuit in this Court (*Burchfield v. Clark, et al.*, No. 4:21-cv-339-DPM) against numerous defendants, including "General Assembly of Arkansas Members"; Jeff Bezos; Jack Ma, who was identified in the caption of that lawsuit as "Owner, Alibaba.com"; and David Zhang, who was identified in that caption as "CEO, Alibaba.com." All of those cases were dismissed.

plaintiff that assumes facts that have not been pleaded." *Id.* (quotation marks omitted); *see Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914).

## ARGUMENT

**I. The Court Should Dismiss The Claims Asserted Against AGHL Because Plaintiff Cannot Satisfy His Burden Of Establishing That This Court Has Personal Jurisdiction Over AGHL In This Lawsuit.**

Personal jurisdiction is "an essential element" of a court's jurisdiction, "without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotation marks omitted). When personal jurisdiction has been controverted or denied by a defendant, the plaintiff has the burden of proving facts sufficient to establish that the court has personal jurisdiction over the defendant. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). The plaintiff's personal jurisdiction showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (quotation marks omitted). Personal jurisdiction must be established as to each defendant, *see Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 268 (2017) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (emphasis added)), so it is "plainly unconstitutional" for a court to "consider[] the 'defending parties' together and aggregat[e] their forum contacts in determining whether it ha[s] [personal] jurisdiction," *Rush*, 444 U.S. at 331-32.

One kind of personal jurisdiction is called "general jurisdiction" (also known as "all-purpose jurisdiction"). *See Bristol-Myers Squibb*, 582 U.S. at 262; *Daimler AG v. Bauman*, 571 U.S. 117, 127-28 (2014). *Daimler* "considerably altered the analytic landscape" regarding due process limitations on a court's ability to assert general personal jurisdiction over a corporate defendant. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (rejecting plaintiff's reliance on pre-*Daimler* cases). After *Daimler*, due process principles preclude a court from

exercising general personal jurisdiction over a corporate defendant unless it has been sued in a forum "in which the corporation is fairly regarded as at home." *Daimler*, 571 U.S. at 137.[2] Thus, there are now two bases for asserting general personal jurisdiction—the defendant's place of incorporation and principal place of business. *See id.*

The second kind of personal jurisdiction is called "specific jurisdiction" (also known as "case-linked jurisdiction"). *See Bristol-Myers Squibb*, 582 U.S. at 262; *Daimler*, 571 U.S. at 127-28. The due process inquiry to determine whether a court can assert specific personal jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quotation marks omitted). Thus, for a court to assert specific personal jurisdiction consistent with due process principles, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. Moreover, due process limits "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties[,]" so the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* This means that the relationship among the defendant, the forum, and the litigation "must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (emphasis in original; quotation marks omitted). In other words, "however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive." *Id.* at 285 (quotation marks omitted).

[2] The Arkansas long-arm statute extends personal jurisdiction to the maximum limits permissible by the United States Constitution, so this Court should focus on due process principles without separately analyzing whether that statute authorizes the Court to exercise personal jurisdiction. *See, e.g., Wilkins v. Trial Lawyers, Inc.*, No. Civ. 05-5118, 2006 WL 375618, at *3 (W.D. Ark. Jan. 25, 2006) (citing *Davis v. St. Johns Health Sys., Inc.*, 71 S.W.3d 55, 58 (Ark. 2002)).

Case 4:26-cv-00827-DPM-JJV Document 48 Filed 10/29/26 Page 6 of 14

***First***, Plaintiff cannot satisfy his burden of establishing that this Court has general personal jurisdiction over AGHL in this lawsuit because AGHL is not "at home" in Arkansas within the meaning of the Supreme Court's *Daimler* ruling discussed above. AGHL (a non-operating holding company with numerous subsidiaries) is incorporated under the laws of the Cayman Islands and has its principal place of business in the People's Republic of China. Declaration of Jieyun Li Regarding Alibaba Group Holding Limited ¶¶ 4-5 ("Li AGHL Declaration") (attached as **Exhibit 1**). AGHL is not registered to do business in Arkansas or in any other state in the United States of America. *Id.* ¶ 10. AGHL does not have any offices in Arkansas or elsewhere in the United States of America. *Id.* ¶ 11. AGHL does not have any employees in Arkansas, in the United States of America, or anywhere else in the world. *Id.* ¶ 12. Thus, Plaintiff cannot satisfy his burden of establishing that AGHL is "at home" in Arkansas, so the Court does not have general personal jurisdiction over AGHL in this lawsuit.

***Second***, Plaintiff also cannot satisfy his burden of establishing that this Court has specific personal jurisdiction over AGHL as to his claims because AGHL did not engage in "suit-related conduct" that created a substantial connection with Arkansas within the meaning of the Supreme Court's *Walden* ruling discussed above. This lawsuit involves an alleged purchase (or attempted purchase) of a product from a third-party seller via the Alibaba.com Platform. The Alibaba.com Platform is an electronic web-based platform for exchanging information and offering services online between buyers and sellers all over the world. Li AGHL Declaration ¶ 7. It is a "business-to-business" platform, which means that the platform connects potential buyers that are businesses and potential sellers that are businesses. *Id.* AGHL does not own, operate, or control the Alibaba.com Platform and does not exercise day-to-day control over the indirect subsidiary that

owns and operates that platform. *Id.* ¶¶ 8-9. AGHL does not direct, target, or specifically tailor any of its business activities to or at Arkansas or the United States of America. *Id.* ¶ 10.

Moreover, AGHL did not have any communications with Plaintiff and did not have any connection to the product that he or his company (BSAC LLC) allegedly bought or tried to buy from a third-party seller.[3] AGHL does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on the Alibaba.com Platform. Li AGHL Declaration ¶ 9. AGHL did not participate in or supervise any transaction where Plaintiff (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform from the third-party seller Zichang. *Id.* ¶ 13. AGHL does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so AGHL was not an agent for Zichang when Plaintiff (or his company) allegedly bought or tried to buy a product from Zichang. *Id.* ¶ 14. AGHL does not have any communications with users or members of the Alibaba.com Platform, so Plaintiff could not have communicated with AGHL about any product that he (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 15. AGHL does not send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. *Id.* ¶ 16. Therefore, neither Plaintiff nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from AGHL; or (b) any advertisements, marketing e-mails, or messages where AGHL had any control over their content. *Id.* AGHL does not introduce potential buyers to sellers or otherwise play any role in

[3] As discussed above (page 2), the transaction at issue here actually was an alleged purchase (or attempted purchase) by BSAC LLC, not by Plaintiff himself. The Court can rule on the personal jurisdiction arguments presented here without focusing on that distinction because it does not affect the personal jurisdiction analysis.

creating any contacts between sellers and potential buyers, so AGHL could not have introduced Plaintiff (or his company) to Zichang or played any role in creating any contacts between him (or his company) and Zichang. *Id.* ¶ 17. AGHL plays no role in the sale process involving a product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the sale process involving any purchase (or attempted purchase) by Plaintiff (or his company) of a product offered for sale by Zichang. *Id.* ¶ 18. AGHL plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in manufacturing the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 19. AGHL plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the shipping or distribution process for the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 20. AGHL does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so AGHL could not have taken possession or control of, and could not have taken title to, the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 21. Zichang has never been an agent for AGHL, and AGHL has never stated or done anything to suggest, or create the appearance, that Zichang is AGHL's agent. *Id.* ¶ 22.

In sum, Plaintiff cannot satisfy his burden of establishing that AGHL engaged in any suit-related conduct that created a substantial connection with Arkansas, so this Court does not have specific personal jurisdiction over AGHL in this lawsuit.

## II. In The Alternative, The Court Should Dismiss AGHL From This Lawsuit Because It Is Flawed In Various Respects.

### A. AGHL Should be Dismissed Based on Res Judicata Principles.

The claim-preclusive effect of a judgment issued by a federal court in a federal question

case is an issue of federal common law. *See In re Finstad*, 4 F.4th 693, 696 (8th Cir. 2021). The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." *See New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. *See id.* Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.* at 748-49. By precluding parties from contesting matters that parties have had a full and fair opportunity to litigate, claim preclusion and issue preclusion "protect[] their adversaries from the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

In light of Plaintiff's prior lawsuits in three different federal courts, res judicata principles preclude Plaintiff from revisiting the same alleged factual and legal issues in this lawsuit.

Plaintiff previously asserted civil RICO claims, which arose out of the same Alibaba.com transaction at issue in this lawsuit, in this Court in a lawsuit captioned *Burchfield v. Alibaba.com LLC, et al.*, No. 4:22-cv-00861-LPR (E.D. Ark.). The Complaint filed by Plaintiff in that case is attached as **Exhibit 2.**[4] Plaintiff voluntarily dismissed that lawsuit ***with prejudice***, in a stipulation signed by him acknowledging that "dismissal is appropriate because no viable claim exists." February 2023 Stipulation of Dismissal (attached as **Exhibit 3**). That stipulation also stated that

---

[4] That pleading and some of the other exhibits attached to this brief are publicly available court records, so this Court is permitted to take judicial notice of those records without converting this motion to dismiss into a motion for summary judgment. *See, e.g.*, *Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003); *State of Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

"no compensation in any form has passed directly or indirectly to Plaintiff and no promise, understanding, or agreement to give any such compensation has been made." *Id.*

Plaintiff also asserted civil RICO claims, which arose out of the same Alibaba.com transaction at issue in this lawsuit, in a California federal court in a lawsuit captioned *Burchfield v. Alibaba Group Holding Ltd., et al.*, No. 4:22-cv-02925-HSG (N.D. Cal.). Plaintiff filed an Amended Complaint in that case (attached as **Exhibit 4**), after 28 U.S.C. § 1915 screening of his initial complaint led the court to: (a) hold that it failed to state a RICO claim; and (b) dismiss that pleading with leave to amend. After Plaintiff filed the Amended Complaint, the court dismissed it without leave to amend, stating that the court was "convinced that [Plaintiff] cannot allege facts to cure the defects" identified by the court's order and that "granting Plaintiff further leave to amend would be futile." Order Dismissing Case (attached as **Exhibit 5**).

Plaintiff also asserted civil RICO claims, which arose out of the same Alibaba.com transaction at issue in this lawsuit, in a lawsuit that was initially filed in this Court and then transferred to the Western District of Arkansas, captioned *Burchfield v. Alibaba Group Holding Ltd., et al.*, No. 1:22-cv-01023-SOH (W.D. Ark.). The Complaint and Amended Complaint filed in that lawsuit are attached respectively as **Exhibit 6** and **Exhibit 7**. After engaging in 28 U.S.C. § 1915 screening of those pleadings, Magistrate Judge Bryant issued a report and recommendation in May 2022: (a) stating that Plaintiff was then "an inmate of the Randall L. Williams Correctional Facility of the Arkansas Division of Correction"; (b) recommending that all of his "federal claims be dismissed for failure to state a claim;"; and (c) recommending that "the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith." *Burchfield v. Alibaba Group Holding Ltd.*, No. 1:22-cv-01023-SOH, 2022 WL 2082306, at *1, 10 (W.D. Ark. May 17, 2022). Judge Hickey adopted that report and recommendation in its entirety, dismissing Plaintiff's

federal claims "for failure to state a claim upon which relief may be granted" and certifying "that an in forma pauperis appeal of this Order would not be taken in good faith." *Burchfield v. Alibaba Group Holding Ltd.*, No. 1:22-cv-01023-SOH, 2022 WL 2079880 (W.D. Ark. June 9, 2022).

This lawsuit is a perfect example of why courts use res judicata principles to prevent the kind of duplicative, vexatious litigation abuse perpetrated by Plaintiff. After unsuccessfully pursuing claims arising out of the same purchase (or attempted purchase) at issue here in three prior federal lawsuits against various defendants that Plaintiff believes are associated with the Alibaba.com Platform, he is not allowed to continue his harassment campaign by trying to take yet another bite of the apple. Plaintiff could have asserted the claims alleged in this lawsuit in those prior lawsuits. He apparently thinks that he is allowed to clog up court dockets by vexatiously relitigating *ad nauseam* the same purchase (or attempted purchase) at issue here in multiple, duplicative lawsuits against various defendants that he believes are associated with the Alibaba.com Platform, but that is not correct because res judicata principles give courts tools to protect defendants from "the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153-54. Plaintiff had full and fair opportunities to litigate his claims against various Alibaba defendants in his prior lawsuits, so the Court should dismiss AGHL from this lawsuit based on res judicata principles.

**B. AGHL Should be Dismissed Based on the Applicable Statute of Limitations.**

This lawsuit involves a June 1, 2021 purchase (or attempted purchase) of a product via the Alibaba.com Platform pursuant to a contract between Zichang (the seller) and BSAC LLC (the buyer). *See* Complaint and Receipt (ECF No. 2). Plaintiff waited five years and then filed this lawsuit on June 1, 2026.

AGHL should be dismissed from this lawsuit based on the applicable statute of limitations. Under Arkansas law, a statute-of-limitations period begins to run when there is a "complete and present cause of action," which means "when the injury occurs, not when it is discovered." *Dye v. Diamante*, 2017 Ark. 42, *9, 510 S.W.3d 759, 765 (2017) (quotation marks omitted).

This is a breach-of-contract lawsuit, but BSAC LLC—***not*** Plaintiff—was a party to the alleged contract for the purchase (or attempted purchase) of the chemical product at issue here, and AGHL was not a party to that contract. Thus, for purposes of this motion to dismiss, the claim asserted against AGHL is governed by a three-year statute of limitations that governs an action "founded upon any contract, obligation, or liability not under seal and not in writing," Ark. Code Ann. § 16-56-105(1), or an action "founded on any contract or liability, express or implied," Ark. Code Ann. § 16-56-105(3); *see Pounders v. Rief*, 2009 Ark. 581 (2009) (distinguishing between three-year statute of limitations applicable to actions for breach of an implied contract and five-year statute of limitations applicable to actions for breach of a written contract, Ark. Code Ann. § 16-56-111). In this case, the three-year statute of limitations applies to the claim asserted against AGHL because "there was not a written contractual agreement that would bring [Plaintiff's] claim under the five-year statute of limitations." *Pounders*, 2009 Ark. 581, at *3. Plaintiff filed this lawsuit more than three years after the alleged injury occurred, so AGHL should be dismissed based on the statute of limitations.[5]

**C. AGHL Should be Dismissed Because there was no Contract between it and Plaintiff.**

The first element of a breach-of-contract claim requires a plaintiff to establish "that

[5] Even assuming for the sake of argument that Plaintiff's discovery of the alleged injury were deemed relevant under Arkansas law, Plaintiff's prior litigation conduct establishes that Plaintiff discovered the alleged injury more than four years before he filed this lawsuit on June 1, 2026. The Complaint (Exhibit 6) and Amended Complaint (Exhibit 7) in one of Plaintiff's prior lawsuits (discussed above) were filed respectively in February and March 2022, so Plaintiff was aware of the alleged injury more than four years before he filed this lawsuit.

[plaintiff] and [defendant] entered into a contract." Arkansas Model Jury Instructions-Civil, AMI 2401. Plaintiff's claim against AGHL is flawed because it fails both aspects of that fundamental requirement, so AGHL should be dismissed.

***First***, BSAC LLC—***not*** Plaintiff—was the party to the alleged contract involving the purchase (or attempted purchase) of the chemical product at issue in this lawsuit. The Receipt identifies BSAC LLC as the buyer (ECF No. 2, at ECF page 3).[6]

To state the obvious, Plaintiff and BSAC LLC are legally separate and distinct,[7] so Plaintiff—who was not the buyer/signatory for the contract—is not the proper party to seek damages for an alleged breach of that contract. For example, if Plaintiff had been sued in a breach-of-contract lawsuit for failing to pay for the chemical product at issue in this lawsuit, he could have defended against that lawsuit by arguing that he is not the proper defendant—and pointing out that that BSAC LLC (not Plaintiff) was the buyer. Moreover, if Plaintiff were to recover breach-of-contract damages here from AGHL, nothing would preclude BSAC LLC from subsequently seeking damages from AGHL in a separate lawsuit for the same alleged breach of contract. Plaintiff is not entitled to reap the benefits of doing business through a limited liability company (BSAC LLC) and then disregard the corporate form, when it suits his litigation strategy, by suing in his individual capacity to seek damages for breach of a contract that was entered into by BSAC LLC—not by Plaintiff.

***Second***, the breach-of-contract claim also is fundamentally flawed as to AGHL because it did not enter into the contract at issue here. Whatever may eventually be established regarding

---

[6] This Court is allowed to consider the Receipt when ruling on this motion to dismiss because the Complaint specifically refers to the Receipt as support for Plaintiff's claim (ECF No. 2, at ECF page 1), and Plaintiff attached the Receipt as an exhibit to the Complaint.

[7] "[A] corporation and its stockholders are separate and distinct, even though a stockholder may own the majority or all of the stock," and that rule applies "to limited liability companies and their members." *Thomason v. Randall*, No. 4:12-CV-4155, 2015 WL 247707, at *3 & n.1 (W.D. Ark. Jan. 20, 2015).

Plaintiff's allegations as to ***Defendant Zichang*** (the seller), that does not mean that ***AGHL*** can be held liable for breaching a contract to which it was not a party.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and dismiss AGHL from this lawsuit for lack of personal jurisdiction or, in the alternative, for the reasons set forth above in Section II.

Dated: October 29, 2026

Respectfully submitted,

MCDANIEL WOLFF PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
1307 West 4th Street
Little Rock, AR 72201
(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

and

BALANCE LAW FIRM

B. Robert Liu (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp.*

# EXHIBIT 1

**DECLARATION OF JIEYUN LI**
**REGARDING ALIBABA GROUP HOLDING LIMITED**

I, Jieyun Li, declare as follows:

1. I make this declaration based on personal knowledge and my review of corporate records in the regular course of my duties. I am over the age of eighteen and am authorized to make the statements set forth in this declaration. If called as a witness, I could and would competently testify to the statements set forth below.

2. I am Senior Legal Counsel providing legal services to Alibaba Group Holding Limited ("AGHL"), one of the defendants in this lawsuit.

3. My duties and responsibilities include providing legal services and guidance to AGHL. As part of my job, I coordinate and supervise the work of outside counsel representing AGHL in this lawsuit. I have learned, and on that basis can testify to, the following information in the course of providing legal services and guidance to AGHL.

4. AGHL is a corporation that is incorporated under the laws of the Cayman Islands and has its principal place of business in the People's Republic of China.

5. AGHL is a non-operating holding company that has numerous subsidiaries.

6. AGHL is a separate legal entity from all of its subsidiaries. AGHL maintains its own books and records separate from those of any subsidiary.

7. Alibaba.com ("the Alibaba.com Platform") is an electronic web-based platform for exchanging information and offering services online between buyers and sellers all over the world. The Alibaba.com Platform is a "business-to-business" platform, which means that the platform connects potential buyers that are businesses and potential sellers that are businesses.

8. Alibaba.com Singapore E-Commerce Private Limited ("Alibaba Singapore"), which is an indirect subsidiary of AGHL, owns and operates the Alibaba.com Platform. Alibaba Singapore

is not organized under the laws of any state in the United States of America and does not have any offices in the United States of America. AGHL does not exercise day-to-day control over Alibaba Singapore or any other AGHL subsidiaries.

9. AGHL does not own, operate, or control the Alibaba.com Platform and does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on the Alibaba.com Platform.

10. AGHL is not registered to do business in the State of Arkansas or in any other state in the United States of America. AGHL does not direct, target, or specifically tailor any of its business activities to or at the State of Arkansas or the United States of America.

11. AGHL does not have any offices in the State of Arkansas or elsewhere in the United States of America.

12. AGHL does not have any employees in the State of Arkansas, in the United States of America, or anywhere else in the world.

13. AGHL did not participate in or supervise any transaction where Plaintiff Bradley Burchfield (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform from a third-party seller called Zichang New Materials (shandong) Co. Ltd. ("Zichang").

14. AGHL does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so AGHL was not an agent for Zichang when Mr. Burchfield (or his company) allegedly bought or tried to buy a product from Zichang.

15. AGHL does not have any communications with users or members of the Alibaba.com Platform, so Mr. Burchfield could not have communicated with AGHL about any product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

16. AGHL does not send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. Therefore, neither Mr. Burchfield nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from AGHL; or (b) any advertisements, marketing e-mails, or messages where AGHL had any control over their content.

17. AGHL does not introduce potential buyers to sellers or otherwise play any role in creating any contacts between sellers and potential buyers, so AGHL could not have introduced Mr. Burchfield (or his company) to Zichang or played any role in creating any contacts between him (or his company) and Zichang.

18. AGHL plays no role in the sale process involving a product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the sale process involving any purchase (or attempted purchase) by Mr. Burchfield (or his company) of a product offered for sale by Zichang.

19. AGHL plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in manufacturing the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

20. AGHL plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the shipping or distribution process for the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

21. AGHL does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so AGHL could not have taken possession or control of, and could not have taken title to, the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

22. Zichang has never been an agent for AGHL. AGHL has never stated or done anything to suggest, or create the appearance, that Zichang is AGHL's agent.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22 day of August, 2026.

Jieyun Li

# EXHIBIT 2

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 19 2022

TAMMY H. DOWNS, CLERK
By: [signature] DEP CLERK

IN THE UNITED STATES DISTRICT COURT

Eastern FOR THE

~~Western~~ DISTRICT OF Arkansas

Bradley C. Burchfield, and others similarly situated — PLAINTIFF

v. Case No. 4:22-cv-861-LPR

Alibaba Group Holding Limited ("Alibaba"), — DEFENDANTS

Alibaba.com, Inc. ("Alibaba")

(Jack Yun Ma, Joseph C. Tsai, Jonathan Zhaoxi Lu,

Maggie Wei Wu, David Zhang), Third-party sellers of

Isopropylbenzylamine on Alibaba.com (Zichang New Materials

(Shandong) Co., Ltd. (Erica Wang, Sweety Yin)

Shaanxi Bloom Tech Co., Ltd. (Alex Vivi), etc); Casey Zhao;

Gera Vid So; Shaanxi Bloom Tech Co., Ltd. (Alex Vivi);

; 400 South El Camino Real, San Mateo, CA 94402;

525 Almanor Ave., 4th Floor, Sunnyvale, CA 94085;

sales@bloomtechz.com; Shandong Look Chemical Company;

This case assigned to District Judge Rudofsky
and to Magistrate Judge Harris

Timothy J. Shea and Uttam Dhillon (DEA directors, respectively, — Third-Party ~~Defendants~~ Plaintiff

in personal and official capacities)

**COMPLAINT**

Comes now the Plaintiff ,Bradley C. Burchfield pro se, and for a CIVIL RICO COMPLAINT under 18 U.S.C Sec. 1961-1968 and 15 U.S.C. Sec. 1125 (a)(1)(A)(B) with the civil remedy pursuant to as well as 18 U.S.C Sec. 1964(c) and 15 U.S.C. Sec. 1125 (3)(4) as the Plaintiff herein, the owner of Burchfield Sales & Consulting, LLC., and Burchfield's Welding & Fabrication, LLC., was injured in both business and property by the Defendants, in kind.

WHEREAS the Defendants, in kind, have established an "enterprise" established to sell methamphetamine with a chemical formula of C10H15N, under its chemical CAS# 102-97-6 on Alibaba.com with the name isopropylbenzylamine, with a chemical formula C10H15N, is used, marketed, and shipped via mail as a "rust inhibitor" and "acrylic nail resin" as well as under the name calcium acetate and poly-vinyl alcohol. See Sedima, S.P.R.L. v Imrex Co., U.S. 105 S. Ct. 3275, 3284-85, 87 L. Ed. 2d 346 (1985) 18 U.S.C. Sec. 1961(a) for dealing in controlled substances punishable by federal or

state law by prison time of a year. In addition, these acts fall under Title 42 USC § 1962. Prohibited Activities. (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. And (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. *(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section*

WHEREAS the Plaintiff, as owner of a welding and metal fabrication business purchased several kilograms of the product from third-party "Alibaba" defendants(Shandong Look Chemical Company, Alex Vivi, Shaanxi Bloomtech Co.) incorporated by reference herein on Alibaba.com in February-April of 2020 until June of 2021 for use as, advertised by the third-party companies on the Alibaba.com site and in conversations stored on the "Alibaba cloud", "rust inhibitor" to be used before and after welding, and as an "acrylic nail resin" for his sales and consulting business both of which were misrepresentations, and mail fraud as the salesperson insisted on shipping the product under the name calcium acetate, poly-vinyl alcohol, and acrylic nail resin, to the use of the product as neither long nail or short nail could be made from the liquid, and subsequently the Plaintiff was arrested with half a gram of the substance in April of 2021 and charged with possession of methamphetamine. Thus the defendants violated 15 U.S.C. Sec. 1125 (a)(1)(A)(B) by "misrepresenting in a commercial advertisement" that they were selling a "legal product", the origin of the products (also an act of mail fraud) as they were shipped from Rosemead, California by Erica Wang a sells associate for , Zichang New Materials (Shandong) Co., Ltd. and not China, and mislabeled the package that was mailed as other substances that were advertised on the site. This misrepresentation has cause multiple legal and monetary problems for the Plaintiff in an amount exceeding $90,000.00 USD.

WHEREAS the Plaintiff used the liquid form, purchased from Shandong Look Chemical Company in March-April 2020 and was told by the salesperson on Alibaba.com that it was a "rust inhibitor", as a paint prep and metal prep on his business owned welder which rusted the electrical components making it inoperable. After applying it to the underside of his business owned truck, 2002 Chevrolet Duramax 3500, to prevent the frame from rusting the volatile chemicals caused the transfer case to weaken which resulted in a hole in the metal subsequently releasing the oil from the transfer case ruining the transmission as well as any metal it was used on as advertised. See attached picture of transfer case.

WHEREAS the Plaintiff, sustained not only loss to his business and property from the transaction as the product turned out to be a diluent of methamphetamine which is illegal in the state of Arkansas and punishable by more than one year in prison, subsequently it could not be sold or used as advertised.

WHEREAS Alex Vivi the salesperson for Shaanxi Bloom Tech did not deliver a kilogram of isopropylbenzyalmine after it was paid for on Alibaba.com even after a dispute was made on the site. The plaintiff was told he would not be receiving his money or his product between March-April 2020. This commercial transaction harmed the Plaintiff and the arbitration was not successful leading the plaintiff to believe this was a "predicate act" violation of mail fraud 18 U.S.C. 1341 as the defendant said the product was mailed but it was never delivered leading the plaintiff to believe he was defrauded by

means of material false representations and promises, and that there was reasonable foreseeability that the mail would be used, and the mail was used according to Alex Vivi messages stored on the Alibaba cloud. This was the only package ordered and not delivered. The wire transfer was sent from First Financial Bank in Mena, Arkansas (available in discovery) to Citi Bank U.S. with Alibaba.com as the beneficiary with an address of 400 South El Camino Real, San Mateo, CA 94402.

WHEREAS the Plaintiff was found in possession of ½ gram of product purchased from Alibaba.com and charged with possession of methamphetamine in the state of Arkansas in April of 2021 and is facing a 6–12-year prison sentence hence he was proximately harmed by the transaction with irreparable injury to his business, property, and person. This also violated 15 U.S.C. Sec. 1125 (a)(1)(A)(B) most specifically (a)(1)(B) as the advertising was "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" as the product isopropylbenzylamine was promoted and advertised as a legal product.

WHERAS the Plaintiff filed 40+ 1983 forms and served one on the defendants, see 6:20-cv-06150, both by U.S. Mail and by files transferred to Casey Zhao, a third-party vendor of ephedra seneca seeds on Alibaba.com for Guangxi Naturix Import & Export Co., Ltd (https://ynbamboo.en.alibaba.com). The Plaintiff served the defendants in January of 2021, the sellers on the site issued a statement the site would no longer be selling the products isopropylbenzylamine after April 2021 but did divulge this material information to investors in violation of Securities Exchange Act.

WHEREAS on December 5, 2021, the Plaintiff received a threatening message from Gera Vid So referring to a third-party seller, Casey Zhao, on Alibaba.com which is a predicate act of 18 U.S.C. Sec. 1512(b)(3), 1513, and 18 U.S.C 1514(d)(1)(B)(i) establishing a "pattern of racketeering activity" by committing multiple "predicate acts" against the plaintiff. It is the Plaintiff's belief that Casey Zhao, a Chinese national, transmitted this information to Gera Vid So an associate of the Sinaloa Cartel. See attached Exhibit A3.

WHEREAS this same "pattern" of the third-party vendors acting as an "alter ego" of the parent company Alibaba.com and Alibaba Group Holding Limited has been exhibited in infringement cases in the southern district of New York, as well as several securities fraud cases, See Moonbug Entm't v All Night Revelry Store (S.D. NY 2022) which is a reason the "corporate veil should be pierced" as the liabilities of one company have been shifted to another front company/s in the same pattern to avoid responsibility.

WHEREAS under 18 U.S.C Sec. 1963(k) the testimony of any witness relating to the forfeiture of property by mitigation or remission petition may be ordered to be taken by deposition under Fed. R. Crim. P. 15. Under 18 U.S.C. Sec. 1963(4) a hearing must be held 30 days after filing.

WHEREAS the "predicate acts" have injured the Plaintiff, and others similarly situated, under 18 U.S.C Sec. 1962 and 1963 the Plaintiffs move to have the court consider this a class action and to certify the class with proper appointment of counsel.

WHEREAS this Honorable Court has jurisdiction and venue over the defendants under 18 U.S.C Sec. 1963(j) to enter orders without regard to the location of any property, as the Alibaba defendants address of business in the United States has been listed as a defendant to bare the

same name as the beneficiary on the third-party vendor bank accounts at Citibank New York branch, or security.

WHEREAS the court also has jurisdiction under 18 U.S.C. Sec. 1965(a-d) and immunity of witnesses can be found under 18 U.S.C. Sec 6001-6005. See U.S. v Keltner (8th Cir. 1998); U.S. v Wilson (E.D. Ark. 1998), and any person injured by a defendant is due damages threefold the loss.

WHEREAS the Plaintiff entered into multiple contracts with Alibaba.com and third-party sellers, beginning in March of 2020 until June 2021, which could make the plaintiff a contractor, sub-contractor, employee, or as in this case one-kilogram package, purchased from Shandong Look Chemical Company in March of 2020, was addressed from the Consignor, David Zhang the then CEO of Weifang, China, to the Plaintiff as the Consignee this could also protect the Plaintiff as a "whistleblower" under SEC regulations and 18 U.S.C. 1514(a). See Civil Action to Protect Against Retaliation in Fraud Cases 18 U.S.C 1514A(e)(1)(2) NONENFORCEABILITY OF CERTAIN PROVISIONS WAIVING RIGHTS AND REMEDIES OR REQUIRING ARBITRATION OF DISPUTES. See Sedima, S.P.R.L. v. Imrex Co. U.S. 105 S. Ct. 3275, 3284-85, 87 L. Ed. 2d 346 (1985)

WHEREAS the officers of Alibaba.com, Inc. and Alibaba Group Holding Limited violated their fiduciary duty to shareholders and concealed material information in the process, thus violating the mail fraud statute, 18 U.S.C. 1341, these acts were intentional and willful conduct designed to deceive or defraud investors by artificially (repurchasing stock with funds from RICO predicate acts and discoverable through bank transfers at Citibank US) affecting the price of securities. See Ernst & Ernst v Hochfelder, 425 U.S. 185, 199, 96 S. Ct. 1375, 1384, 47 L. Ed. 2d 668 (1976). None of this information was disclosed to the plaintiff while he was a shareholder from 2016-2020 when he purchased Alibaba (BABA) stock on E*Trade.

WHEREAS the Alibaba Defendant "Alibaba.com" principal place of address is 400 South El Camino Real, San Mateo, CA 94402; this court has jurisdiction to serve Alibaba.com at that address as a "continuing criminal enterprise", and every third-party defendant/seller, excluding Timothy J. Shea, has their Citibank account beneficiary listed as this address.

WHEREAS Alibaba Group Holding Limited principal place of business in the United States is 525 Almanor Ave., 4th Floor, Sunnyvale, CA 94085.

WHEREAS Erica Wang an American salesperson for Alibaba.com third-party vendor Zichang Materials ships the products sold on the Alibaba.com website from P.O. Box 6368, Rosemead, CA 91770 constitutes mail and wire fraud as the mail was used. From conversation with Erica Wang on the Alibaba.com website the plaintiff was told that Sweety Yin would handle the transaction. This product did arrive in June of 2021 from the address referenced herein from Erica Wang. This was also a violation of 15 U.S.C. Sec. 1125 (a)(1)(A)(B) as the destination of origin was not the advertised origin, and mail-fraud violation.

WHEREAS Timothy J. Shea and Uttam Dhillon have violated predicate acts of 42 U.S.C. 1961 and 15 U.S.C. Sec. 1125 (a)(1)(A)(B) by allowing misrepresentation of isopropylbenzylamine as a federally legal substance on the DEA website, with the same chemical formula as methamphetamine, "indirectly" allowing the Alibaba defendants to circumvent the Controlled Substances Act, similar to big tobacco companies advertising light cigarettes as being safer, "but

for" this "proximate cause" the plaintiff would not have continued purchased the product which is not listed on any schedule but has the same chemical formula as methamphetamine C10H15N and does give a positive field test for methamphetamine and "Alibaba Defendants" advertise a 20 Metric ton per month supply rate on the site. However, the DEA has made no effort to publicly transmit this information to the general public and in the process assisted the "Alibaba" defendants in their "racketeering enterprise" to create a public nuisance and public health epidemic while continuing to federally incarcerate American citizens. In addition, these acts fall under Title 42 USC § 1962. Prohibited Activities. (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. And (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
*(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.*

WHEREAS Timothy J. Shea and Uttam Dhillon, the director of the DEA from July 2018 to January 2021, violated all of the subsections Title 42 USC § 1961, most specifically Section 1952 by continuing criminal prosecutions against the citizens of the United States for possession or sale of C10H15N under 1961 (B) and 1961 (A)

Title 42 USC § 1961. Definition. As used in this chapter-(1) "racketeering activity" means:

(A) *any act or threat involving ... relating to 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511* (relating to obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery or extortion), section 1952 (relating to racketeering,

*(B) Aiding and Abetting and Conspiracy Against the Rights of Citizens*

WHEREAS bolt carriers for M16s and silencers are also sold on the site leading the Plaintiff to believe "Alibaba Defendants" appear to be a Communist China Military Company (CMCC) which are banned on the International Emergency Economic Powers Act from conducting business.

WHEREAS the Alibaba defendants conduct business with the Hebei Sinaloa Trading Co. (See attached Exhibit A1). Effectively linking them to the Sinaloa Cartel, a known narco terrorist organization and foreign narcotics kingpin.

WHEREAS on January 9, 2022, a threatening email from sales@bloomtechz.com , a third-party seller on the Alibaba website who was sold my email and contact information by Alibaba.com because the Plaintiff had inquired about isopropylbenzylamine on the site, was sent to the plaintiff

instructing "him to keep silent" about the sales of the chemical C10H15N in its various forms. See attached Email Exhibit A2. A violation of 18 U.S.C 1514(d)(1)(B)(i).

WHEREAS these threatening messages and emails are violations of 18 U.S.C 1512 (b)(3) as the communications are attempts to prevent the Plaintiff from pursuing cases against the defendants, in kind, in Federal court of possible commissions of Federal offenses. See attached email.

WHEREAS these transmissions to the Plaintiff from Gera Vid So and third-party vendors of Alibaba.com of words, pictures, and/or sound while utilizing a landline telephone, cell phone, computer, corporate internet service, or public internet service is a violation of interstate wire communications under 18 U.S.C. 1343 as well as the Communications Act of 1934 and are intended to intimidate or retaliate against the defendant for "providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings," against the defendants violating 18 U.S.C. 1513 (a)(1)(B) and 18 U.S.C 1514(d)(1)(B)(i) as these marketing emails serve no legitimate purpose other than to harass the plaintiff or entice an addict into making a purchase of possible illegal products and directing him to "keep silent" about the possible illegal acts. The plaintiff is in fear for his life. These are two predicate acts required for filing a CIVIL RICO claim.

WHEREAS the Plaintiff has shown many predicate acts of RICO offenses by the defendants were not only the "but for" cause of his injuries but the "proximate" cause as well. Thus, part (b) does not restrict RICO injunctive relief to the government, but merely sets aside for civil RICO cases the traditional rule that only a victim may enjoin a crime. See In re Debs, 158 U.S. 564, 582-84, 15 S. Ct. 900, 905-06, 39 L. Ed. 1092 (1895), quoting Religious Technology Center v. Wollersheim, 796 F. 2d 1076 (9th Cir. 1986)

WHEREAS the defendants, in kind, have created a Public Nuisance by their conduct creating a proximate causation claim as their conduct was likely to cause a significant invasion of public right. See In re Firearm Cases 126 Cal. App 4th at 988 as the Defendants could reasonably foresee (1) that their conduct would likely increase addiction, overdoses, deaths, and criminal prosecutions related to the sales of these chemicals without notice to the public of the legality, and (2) each link in the causal chain such that no intervening acts could sever that chain set up by the corporate structure, including federal government interference.

WHEREAS the Alibaba marketing defendants (sales@bloomtechz.com, Sweety Yin, Erica Wang, Alex Vivi), and the "DEA" made deceptive claims in promoting their C10H15N products in order to sell and produce more methamphetamine derived products than the legitimate marked could support. Liability may be imposed on those who aid and abet another's violation of the UCL if the individual knows the other's conduct constitutes a violation of and gives substantial assistance or encouragement to the other to so act. DeCarlo v Costco Wholesale Corp. (S.D. Cal 2020)

WHEREAS the 9th Circuit has acknowledged that a consumer who has been overcharged may claim an injury to property in the context of a commercial transaction as the Plaintiff herein has made reference to by incorporation. See Canyon Cnty. v. Syngenta Seeds, Inc. 519 F. 3d. 969, 976 (9th Cir. 2008)

THEREFORE the Plaintiff seeks equitable relief against the defendants in kind in the form of permanent injunctions on the servers and the Alibaba.com site to combat the terrorist acts being committed under TRIA and the Foreign Narcotics Kingpin Designation Act with appropriate writs of attachment issued for $90,500.00 in compensatory damages to business property, attorney fees, and $500,000,000,000.00 in United States currency or real property for deprivation of rights, duress, physical pain and suffering, pre-judgment and post-judgment interest for punitive damages.

THEREFORE the Plaintiff wishes to begin proceedings with the Office of Foreign Asset Control to have the court establish these defendants herein as Foreign Narcotic Kingpins.

THEREFORE the Plaintiff wishes to be placed in the United States Marshals witness protection program, with other general victim assistance as he has no transportation to appear for any hearing.

THEREFORE the Plaintiff wishes to enter into a joint prosecution and sharing agreement to assist the United States Attorney in the prosecution of the defendants.

I declare the foregoing to be true and correct under penalty of perjury.

Respectfully Submitted,

8/29/22 Bradley C. Burchfield

Bradley C. Burchfield

3201 W. Pullen

Pine Bluff, AR 71601

479-223-0038

870-850-7527

burchfieldbradley123@icloud.com

Threatening Email →
Page 1

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

## Details N-Isopropylbenzylamine

4 messages

**sales@bloomtechz.com** <sales@bloomtechz.com> Sun, Jan 9, 2022 at 8:47 PM
To: burchfieldbradley123@gmail.com

**Fresh batch out!**
**Only 16kg Blue Pure N iso crystal in stock, if miss each other, wait another month.**
**Price list (EXW USD$):**
**100g, $298usd, 500g, $496, 1kg, $820**



**Very Important information of Isopropylbenzylamine, CAS 102-97-6 crystal series product:**
Welcome to become a new comer of our group of buyers, I am Aurora Song, sales manager.
**WhatsApp/WeChat: +86 17791833715**
Frankly, the most we have been asked is the **effect**.

We have made many kinds of chemicals into crystals successfully. The **FAQ** pls check below:
1.How we set the price
We set the product price according to the price of raw materials and product production cycle, The price has nothing to do with whether the product is nice to use.
2.Which is the best
From shape, Pure N ISO is big bar, it is the best. From smell, the 170N ISO and 2A4P is the best. Or some other new kinds of chemical, we researched it for our stable buyers, we can't disclose it to you.
If you request the big bar crystal is no smell, it is impossible. Because it is the theory of chemistry, it is nothing to do with capacity.
**Each words and pictures here is real. dont talk about any fake here!**
3.Could you disclose the shortcoming of our product?
Yes, Pure N ISO has a bit of smell, and our 170MP N ISO is little smell. 2A4P is also little smell, in addition, it

Threatening MSG

has many other positive comments from other users.
**4.Crystal Mixed service**
It must be a legal product, otherwise you have better keep silent.
**Welcome to buy more chemicals from our company, welcome to be the senior buyer of our company and we can share more technology support for you!**
Maybe some of yours want to use the crystal for diluting, or want it has some effect of you want.

From the opinion of chemical researching, this is the Same Molecule Formula of $C10H15N$.

Does this chemical meet your requirements? Is it easy to use? This depends not only on
his molecule formula, but also on his chemical space structure and the pharmaceutical properties
that this structure should give.

## Price List(Without Shipping fee)

**1.CAS 102-97-6, N-Isopropylbenzylamine(N ISO)**
100g,$168, 500g,$389, 1kg,$650/kg
Please choose one specification below:
(1)Pure N iso 210, Largest crystal, smell
Pink/Blue/Yellow/Green etc. color N ISO,
1kg, $980/kg, Customization, Food grade
(2)N-ISO mixed 180 Medium
(3)N-ISO mixed 170, Smallest crystal, No smell

**2.CAS 4395-73-7, 4-Isopropylbenzylamine(4 ISO)**
100g,$280, 500g,$900, 1kg,$1,500/kg

**3.CAS 22374-89-6, 2-Amino-4-phenylbutane(2A4P)**
100g,$280, 500g,$900, 1kg,$1,500/kg

---

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Sun, Apr 10, 2022 at 10:12 AM
To: sales@bloomtechz.com

Alex how you doing? Actually this product doesn't have a schedule with the DEA. But it's illegal in this state. I use it for a rust inhibitor, as was advertised. It didn't work.
[Quoted text hidden]
--
Hope credit

---

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Fri, Jun 10, 2022 at 12:43 PM
To: nick@covenantrecovery.com

[Quoted text hidden]

---

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Mon, Jun 13, 2022 at 11:01 AM
To: s.nathan300192@yahoo.com

---------- Forwarded message ---------
From: <sales@bloomtechz.com>
Date: Sun, Jan 9, 2022 at 8:47 PM
Subject: Details N-Isopropylbenzylamine
To: <burchfieldbradley123@gmail.com>

[Quoted text hidden]



FROM:

Bradley Burchfield
3201 W. Pullen St
Pine Bluff, AR 71601

TO:

United States District Court
Office of the Clerk
500 N. Stateline Ave
Texarkana, AR 71854

Utility Mailer
10 1/2 x 16

ReadyPost

# EXHIBIT 3

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 24 2023

TAMMY H. DOWNS, CLERK
By: [signature] DEP CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS

BRADLEY C. BURCHFIELD,

*Plaintiff,*

v.

ALIBABA.COM LLC, *et al.*

*Defendants.*

No. 4:22-cv-00861-LPR

**STIPULATION OF DISMISSAL**

WHEREAS this lawsuit was filed on September 19, 2022;

WHEREAS the Plaintiff desires to voluntarily dismiss the lawsuit against all Defendants with prejudice;

WHEREAS Defendants Alibaba.com U.S. LLC[2] and Alibaba Group (U.S.) Inc. expressly deny the Plaintiff's allegations and do not waive their objections to personal jurisdiction and venue, but concur with the Plaintiff that dismissal is appropriate because no viable claim exists;

WHEREAS for the avoidance of doubt, no compensation in any form has passed directly or indirectly to the Plaintiff and no promise, understanding, or agreement to give any such compensation has been made;

NOW, THEREFORE, upon consent of the parties, IT IS HEREBY STIPULATED AND AGREED that this Action is dismissed against all Defendants with prejudice.

[2] The Plaintiff named as a defendant "Alibaba.com LLC," which is a nonexistent entity. This stipulation is submitted on behalf of Alibaba.com U.S. LLC based on the assumption that is the entity the Plaintiff intended to sue.

Dated: February 24, 2023

**BRADLEY C. BURCHFIELD**

By: ______________________
Bradley C. Burchfield
*Plaintiff*
3201 W. Pullen St.
Pine Bluff, AR 71601
479-223-0038
burchfieldbradley123@icloud.com

**RMP, LLP**

By: ______________________
Lisa M. Geary (2020102)
Timothy C. Hutchinson (2000030)
RMP, LLP
5519 Hackett St., Suite 300
Springdale, AR 72762
lgeary@rmp.law
thutchinson@rmp.law
(479) 443-2705

*Counsel for Defendants Alibaba.com U.S. LLC and Alibaba Group (U.S.) Inc.*

# EXHIBIT 4

FILED

AUG 30 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

IN THE UNITED STATES DISTRICT COURT

FOR THE

Northern DISTRICT OF California

Bradley C. Burchfield, and others similarly situated PLAINTIFF

v. Case No. 4:22-CV-02925

Alibaba Group Holding Limited ("Alibaba"), DEFENDANTS

Alibaba.com, Inc. ("Alibaba")

(Jack Yun Ma, Joseph C. Tsai, Jonathan Zhaoxi Lu,

Maggie Wei Wu, David Zhang), Zichang New Materials

(Shandong) Co., Ltd. (Erica Wang, Sweety Yin); Casey Zhao;

Gera Vid So; Shaanxi Bloom Tech Co., Ltd. (Alex Vivi);

; 400 South El Camino Real, San Mateo, CA 94402;

525 Almanor Ave., 4th Floor, Sunnyvale, CA 94085;

sales@bloomtechz.com; Shandong Look Chemical Company;

Timothy J. Shea and Uttam Dhillon (DEA directors, respectively,

in personal and official capacities)

NC

JS

## AMENDED COMPLAINT

Comes now the Plaintiff *in forma pauperis*, Bradley C. Burchfield pro se, and for a CIVIL RICO COMPLAINT under 18 U.S.C Sec. 1961-1968 with the civil remedy pursuant to15 U.S.C. Sec. 1125 (a)(1)(A)(B) as well as 18 U.S.C Sec. 1964(c) as the Plaintiff herein, the owner of Burchfield Sales & Consulting, LLC., and Burchfield's Welding & Fabrication, LLC., was injured in both business and property by the Defendants, in kind. In addition, the plaintiff also pleads with the court for relief available under 21 U.S.C Sec. 1901(a), 201(a) of the Terrorism Risk Insurance Act (TRIA), the Anti-Terrorism Clarification Act of 2018, and to have the Defendants listed with the Office of Foreign Asset Control as a Foreign Narcotics Kingpin under the Foreign Narcotics Kingpin Designation Act of 18 U.S.C. Sec. 2331, 2333-34 Section 805(b). See Stansell v. Revolutionary Armed Forces of Columbia (M.D. Fla. 2010; D. D.C. 2019), and for

WHEREAS the Defendants, in kind, have established an "enterprise" established to sell methamphetamine with a chemical formula of C10H15N, under its chemical CAS# 102-97-6 on Alibaba.com with the name isopropylbenzylamine, with a chemical formula C10H15N, is used, marketed, and shipped via mail as a "rust inhibitor" and "acrylic nail resin" as well as under the name calcium acetate and poly-vinyl alcohol. See Sedima, S.P.R.L. v Imrex Co., U.S. 105 S. Ct. 3275, 3284-85, 87 L. Ed. 2d 346 (1985) 18 U.S.C. Sec. 1961(a) for dealing in controlled substances punishable by federal or

state law by prison time of a year. In addition, these acts fall under Title 42 USC § 1962. Prohibited Activities. (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. And (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section*

WHEREAS the Plaintiff, as owner of a welding and metal fabrication business purchased several kilograms of the product from third-party "Alibaba" defendants(Shandong Look Chemical Company, Alex Vivi, Shaanxi Bloomtech Co.) incorporated by reference herein on Alibaba.com in February-April of 2020 until June of 2021 for use as advertised by the third-party companies on the Alibaba.com site "rust inhibitor" to be used before and after welding, and as an "acrylic nail resin" for his sales and consulting business both of which were misrepresentations, and mail fraud as the salesperson insisted on shipping the product under the name calcium acetate, poly-vinyl alcohol, and acrylic nail resin, to the use of the product as neither long nail or short nail could be made from the liquid, and subsequently the Plaintiff was arrested with half a gram of the substance in April of 2021 and charged with possession of methamphetamine. Thus the defendants violated 15 U.S.C. Sec. 1125 (a)(1)(A)(B) by giving "false or misleading descriptions of fact, or false or misleading representations of fact" that they were selling a "legal product", the origin of the products as they were shipped from Rosemead, California by Erica Wang a sells associate for , Zichang New Materials (Shandong) Co., Ltd. and not China, and mislabeled the package that was mailed as other substances that were not advertised on the site. This misrepresentation has cause multiple legal and monetary problems for the Plaintiff in an amount exceeding $90,000.00 USD.

WHEREAS the Plaintiff used the liquid form, purchased from Shandong Look Chemical Company in March-April 2020, as a paint prep and metal prep on his business owned welder which rusted the electrical components making it inoperable. After applying it to the underside of his business owned truck, 2002 Chevrolet Duramax 3500, to prevent the frame from rusting the volatile chemicals caused the transfer case to weaken which resulted in a hole in the metal subsequently releasing the oil from the transfer case ruining the transmission as well as any metal it was used on as advertised. See attached picture of transfer case.

WHEREAS the Plaintiff, sustained not only loss to his business and property from the transaction as the product turned out to be a diluent of methamphetamine which is illegal in the state of Arkansas subsequently it could not be sold or used as advertised.

WHEREAS Alex Vivi the salesperson for Shaanxi Bloom Tech did not deliver a kilogram of isopropylbenzyalmine after it was paid for on Alibaba.com even after a dispute was made on the site. The plaintiff was told he would not be receiving his money or his product between March-April 2020. This commercial transaction harmed the Plaintiff and the arbitration was not successful leading the plaintiff to believe this was a violation of 18 U.S.C. 1341 as the defendant said the product was mailed but it was never delivered leading the plaintiff to believe he was defrauded by means of material false representations and promises, and that there was reasonable foreseeability that the mail would be

used, and the mail was used according to Alex Vivi messages stored on the Alibaba cloud. This was the only package ordered and not delivered. The wire transfer was sent from First Financial Bank in Mena, Arkansas (available in discovery) to Citi Bank U.S. with Alibaba.com as the beneficiary with an address of 400 South El Camino Real, San Mateo, CA 94402.

WHEREAS the Plaintiff was found in possession of ½ gram and charged with possession in the state of Arkansas and is facing a 6–12-year prison sentence hence he was proximately harmed by the transaction with irreparable injury to his business, property, and person.

WHERAS the Plaintiff filed 40+ 1983 forms and served one on the defendants, see 6:20-cv-06150, both by U.S. Mail and by files transferred to Casey Zhao, a third-party vendor of ephedra seneca seeds on Alibaba.com for Guangxi Naturix Import & Export Co., Ltd (https://ynbamboo.en.alibaba.com). The Plaintiff served the defendants in January of 2021, the sellers on the site issued a statement the site would no longer be selling the products isopropylbenzylamine after April 2021 but did divulge this material information to investors in violation of Securities Exchange Act.

WHEREAS on December 5, 2021, the Plaintiff received a threatening message from Gera Vid So referring to a third-party seller, Casey Zhao, on Alibaba.com which is a predicate act of 18 U.S.C. Sec. 1512(b)(3), 1513, and 18 U.S.C 1514(d)(1)(B)(i) establishing a "pattern of racketeering activity" by committing multiple "predicate acts" against the plaintiff. It is the Plaintiff's belief that Casey Zhao, a Chinese national, transmitted this information to Gera Vid So an associate of the Sinaloa Cartel. See attached Exhibit A3.

WHEREAS this same "pattern" of the third-party vendors acting as an "alter ego" of the parent company Alibaba.com and Alibaba Group Holding Limited has been exhibited in infringement cases in the southern district of New York, as well as several securities fraud cases, See Moonbug Entm't v All Night Revelry Store (S.D. NY 2022) which is a reason the "corporate veil should be pierced" as the liabilities of one company have been shifted to another front company/s in the same pattern to avoid responsibility.

WHEREAS under 18 U.S.C Sec. 1963(k) the testimony of any witness relating to the forfeiture of property by mitigation or remission petition may be ordered to be taken by deposition under Fed. R. Crim. P. 15. Under 18 U.S.C. Sec. 1963(4) a hearing must be held 30 days after filing.

WHEREAS the "predicate acts" have injured the Plaintiff, and others similarly situated, under 18 U.S.C Sec. 1962 and 1963 the Plaintiffs move to have the court consider this a class action and to certify the class with proper appointment of counsel.

WHEREAS this Honorable Court has jurisdiction and venue over the defendants under 18 U.S.C Sec. 1963(j) to enter orders without regard to the location of any property, as the Alibaba defendants address of business in the United States has been listed as a defendant to bare the same name as the beneficiary on the third-party vendor bank accounts at Citibank New York branch, or security.

WHEREAS the court also has jurisdiction under 18 U.S.C. Sec. 1965(a-d) and immunity of witnesses can be found under 18 U.S.C. Sec 6001-6005. See U.S. v Keltner (8th Cir. 1998); U.S. v Wilson (E.D. Ark. 1998), and any person injured by a defendant is due damages threefold the loss.

WHEREAS the Plaintiff entered into multiple contracts with Alibaba.com and third-party sellers, beginning in March of 2020 until June 2021, which could make the plaintiff a contractor, sub-contractor, employee, or as in this case one-kilogram package, purchased from Shandong Look Chemical Company in March of 2020, was addressed from the Consignor, David Zhang the then CEO of Weifang, China, to the Plaintiff as the Consignee this could also protect the Plaintiff as a "whistleblower" under SEC regulations and 18 U.S.C. 1514(a). See Civil Action to Protect Against Retaliation in Fraud Cases 18 U.S.C 1514A(e)(1)(2) NONENFORCEABILITY OF CERTAIN PROVISIONS WAIVING RIGHTS AND REMEDIES OR REQUIRING ARBITRATION OF DISPUTES. See Sedima, S.P.R.L. v. Imrex Co. U.S. 105 S. Ct. 3275, 3284-85, 87 L. Ed. 2d 346 (1985)

WHEREAS the officers of Alibaba.com, Inc. and Alibaba Group Holding Limited violated their fiduciary duty to shareholders and concealed material information in the process, thus violating the mail fraud statute, 18 U.S.C. 1341, these acts were intentional and willful conduct designed to deceive or defraud investors by artificially (repurchasing stock with funds from RICO predicate acts and discoverable through bank transfers at Citibank US) affecting the price of securities. See Ernst & Ernst v Hochfelder, 425 U.S. 185, 199, 96 S. Ct. 1375, 1384, 47 L. Ed. 2d 668 (1976)

WHEREAS the Alibaba Defendant "Alibaba.com" principal place of address is 400 South El Camino Real, San Mateo, CA 94402; this court has jurisdiction to serve Alibaba.com at that address as a "continuing criminal enterprise", and every third-party defendant/seller, excluding Timothy J. Shea, has their Citibank account beneficiary listed as this address.

WHEREAS Alibaba Group Holding Limited principal place of business in the United States is 525 Almanor Ave., 4th Floor, Sunnyvale, CA 94085.

WHEREAS Erica Wang an American salesperson for Alibaba.com third-party vendor Zichang Materials ships the products sold on the Alibaba.com website from P.O. Box 6368, Rosemead, CA 91770 constitutes mail and wire fraud as the mail was used. From conversation with Erica Wang on the Alibaba.com website the plaintiff was told that Sweety Yin would handle the transaction. This product did arrive in June of 2021 from the address referenced herein from Erica Wang.

WHEREAS Timothy J. Shea and Uttam Dhillon have allowed misrepresentation of isopropylbenzylamine as a federally legal substance on the DEA website, with the same chemical formula as methamphetamine, indirectly allowing the Alibaba defendants to circumvent the Controlled Substances Act, similar to big tobacco companies advertising light cigarettes as being safer, "but for" this "proximate cause" the plaintiff would not have continued purchased the product which is not listed on any schedule but has the same chemical formula as methamphetamine C10H15N and does give a positive field test for methamphetamine and "Alibaba Defendants" advertise a 20 Metric ton per month supply rate on the site. However, the DEA has made no effort to publicly transmit this information to the general public and in the process assisted the "Alibaba" defendants in their "racketeering enterprise" to create a public nuisance and public health epidemic while continuing to federally incarcerate American citizens. In addition, these acts fall under Title 42 USC § 1962. Prohibited Activities. (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. And (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which

affect, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.*

WHEREAS Timothy J. Shea and Uttam Dhillon, the director of the DEA from July 2018 to January 2021, violated all of the subsections Title 42 USC § 1961 by continuing criminal prosecutions against the citizens of the United States for possession or sale of C10H15N under 1961 (B) and 1961 (A)

Title 42 USC § 1961. Definition. As used in this chapter-(1) "racketeering activity" means:

(A) *any act or threat involving ... relating to 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511* (relating to obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery or extortion), section 1952 (relating to racketeering,

*(B) Aiding and Abetting and Conspiracy Against the Rights of Citizens*

WHEREAS bolt carriers for M16s and silencers are also sold on the site leading the Plaintiff to believe "Alibaba Defendants" appear to be a Communist China Military Company (CMCC) which are banned on the International Emergency Economic Powers Act from conducting business.

WHEREAS the Alibaba defendants conduct business with the Hebei Sinaloa Trading Co. (See attached Exhibit A1). Effectively linking them to the Sinaloa Cartel, a known narco terrorist organization and foreign narcotics kingpin.

WHEREAS on January 9, 2022, a threatening email from sales@bloomtechz.com , a third-party seller on the Alibaba website, was sent to the plaintiff instructing "him to keep silent" about the sales of the chemical C10H15N in various forms. See attached Email Exhibit A2. A violation of 18 U.S.C 1514(d)(1)(B)(i).

WHEREAS these threatening messages and emails are violations of 18 U.S.C 1512 (b)(3) as the communications are attempts to prevent the Plaintiff from pursuing cases against the defendants, in kind, in Federal court of possible commissions of Federal offenses.

WHEREAS these transmissions to the Plaintiff from Gera Vid So and third-party vendors of Alibaba.com of words, pictures, and/or sound while utilizing a landline telephone, cell phone, computer, corporate internet service, or public internet service is a violation of interstate wire communications under 18 U.S.C. 1343 as well as the Communications Act of 1934 and are intended to intimidate or retaliate against the defendant for pursuing legal suits against the defendants violating 18 U.S.C. 1513 (b)(3) and 18 U.S.C 1514(d)(1)(B)(i).

WHEREAS the Plaintiff has shown many predicate acts of RICO offenses by the defendants were not only the "but for" cause of his injuries but the "proximate" cause as well. Thus, part (b) does not restrict RICO injunctive relief to the government, but merely sets aside for civil RICO cases the traditional rule that only a victim may enjoin a crime. See In re Debs, 158 U.S. 564, 582-84, 15 S. Ct. 900, 905-06, 39 L. Ed. 1092 (1895), quoting Religious Technology Center v. Wollersheim, 796 F. 2d 1076 (9th Cir. 1986)

WHEREAS the defendants, in kind, have created a Public Nuisance by their conduct creating a proximate causation claim as their conduct was likely to cause a significant invasion of public right. See In re Firearm Cases 126 Cal. App 4th at 988 as the Defendants could reasonably foresee (1) that their conduct would likely increase addiction, overdoses, deaths, and criminal prosecutions related to the sales of these chemicals without notice to the public of the legality, and (2) each link in the causal chain such that no intervening acts could sever that chain set up by the corporate structure, including federal government interference.

WHEREAS the Alibaba marketing defendants (sales@bloomtechz.com, Sweety Yin, Erica Wang, Alex Vivi), and the "DEA" made deceptive claims in promoting their $C_{10}H_{15}N$ products in order to sell and produce more methamphetamine derived products than the legitimate marked could support. Liability may be imposed on those who aid and abet another's violation of the UCL if the individual knows the other's conduct constitutes a violation of and gives substantial assistance or encouragement to the other to so act. DeCarlo v Costco Wholesale Corp. (S.D. Cal 2020)

WHEREAS the 9th Circuit has acknowledged that a consumer who has been overcharged may claim an injury to property in the context of a commercial transaction as the Plaintiff herein has made reference to by incorporation. See Canyon Cnty. v. Syngenta Seeds, Inc. 519 F. 3d. 969, 976 (9th Cir. 2008)

THEREFORE the Plaintiff seeks equitable relief against the defendants in kind in the form of permanent injunctions on the servers and the Alibaba.com site to combat the terrorist acts being committed under TRIA and the Foreign Narcotics Kingpin Designation Act with appropriate writs of attachment issued for $40,500.00 in compensatory damages to business property, attorney fees, and $500,000,000,000.00 in United States currency or real property for deprivation of rights, duress, physical pain and suffering, pre-judgment and post-judgment interest for punitive damages.

THEREFORE the Plaintiff wishes to begin proceedings with the Office of Foreign Asset Control to have the court establish these defendants herein as Foreign Narcotic Kingpins.

THEREFORE the Plaintiff wishes to be placed in the United States Marshals witness protection program, with other general victim assistance as he has no transportation to appear for any hearing.

THEREFORE the Plaintiff wishes to enter into a joint prosecution and sharing agreement to assist the United States Attorney in the prosecution of the defendants.

I declare the foregoing to be true and correct under penalty of perjury.

Respectfully Submitted,

8/21/22 Bradley C. Burchfield

Bradley C. Burchfield
3201 W. Pullen
Pine Bluff, AR 71601
479-223-0038
870-850-7527
burchfieldbradley123@icloud.com



"Transfer Case"



Bradley Burchfield
3201 W. Pullen
Pine Bluff, AR 71601

United States District Court
Office of the Clerk
1301 Clay St.
Oakland, CA 94612-5217



# EXHIBIT 5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRADLEY C. BURCHFIELD,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

Case No. 22-cv-02925-HSG

**ORDER DISMISSING CASE**

Re: Dkt. No. 18

United States District Court
Northern District of California

On May 17, 2022, Plaintiff Bradley C. Burchfield filed this civil action and an application to proceed *in forma pauperis*. *See* Dkt. Nos. 1, 2. On June 15, Magistrate Judge Kandis Westmore granted Plaintiff's application to proceed *in forma pauperis*. Dkt. No. 11. However, in screening the complaint under 28 U.S.C. § 1915, Judge Westmore found that Plaintiff's allegations were insufficient to state a Racketeer Influenced and Corrupt Organizations Act ("RICO") or false advertising claim. *Id.* at 2–3. Judge Westmore therefore dismissed Plaintiff's case for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(c)(2). Plaintiff was nevertheless given an opportunity to file an amended complaint by August 31, 2022. *Id.* at 3.

Plaintiff also filed a motion for temporary injunction. *See* Dkt. No. 6. The Court denied the motion without prejudice to refiling after Plaintiff filed an amended complaint. *See* Dkt. No. 15. In doing so, the Court cautioned Plaintiff that if the amended complaint failed to cure all the defects identified in the prior order, *see* Dkt. No. 11, the complaint could be dismissed in its entirety without further leave to amend. *See* Dkt. No. 15 at 2.

Plaintiff filed a timely amended complaint. *See* Dkt. No. 18 ("FAC"). However, the Court

finds that it still does not cure the deficiencies previously identified. According to the FAC, Defendants are involved in a criminal enterprise to sell methamphetamine on Alibaba.com. *See id.* Plaintiff inadvertently purchased the product for use as a "rust inhibitor" and "acrylic nail resin," but it did not work as advertised. *Id.* Instead, it corroded electrical components and his truck, and Plaintiff was arrested for possession of methamphetamine. *Id.* Plaintiff asserts that at some point he received a threatening message referring to Alibaba.com, and believes it was sent by an associate of the Sinaloa Cartel. Plaintiff also suggests that employees of the United States Drug Enforcement Administration ("DEA") were involved by providing false or misleading information on the DEA website. *Id.* Critically, Plaintiff fails to explain with sufficient detail how each Defendant was involved in this alleged conduct or what the connection is among Defendants. *See* Dkt. No. 11 at 3. Plaintiff offers conclusory allegations, but few facts to support his contentions.

Plaintiff has had an opportunity to amend his complaint, and the Court is now convinced that he cannot allege facts to cure the defects identified in the Court's previous order. *See* Dkt. No. 11. The Court thus concludes that granting Plaintiff further leave to amend would be futile. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs.") (quotations omitted); *see also Brazil v. United States Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995) ("Although a pro se litigant . . . may be entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong."). The Court therefore **DISMISSES** the case without leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (quotation omitted)).

//

//

//

United States District Court
Northern District of California

United States District Court
Northern District of California

The Clerk is directed to enter judgment in favor of Defendants and to close the case.

**IT IS SO ORDERED.**

Dated: 12/9/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

# EXHIBIT 6

Case 4:22-cv-00193-DPM Document 1 Filed 02/28/22 Page 1 of 8

IN THE UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF ARKANSAS

BRADLEY C. BURCHFIELD — PETITIONER
VS. Case No. 4:22-cv-00193-DPM — RESPONDENT

Alibaba Group, Jack Ma, JP MORGAN CHASE BANK, Amazon, Blackrock (Investors), Casey Zhao (Alibaba), John Doe (Mexican), John Doe II, Erica Wang, Sweety Yin, All Alibaba Investors (10% holder) Drug Enforcement Agency

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
FEB 28 2022
TAMMY H. DOWNS, CLERK
By: [signature] DEP CLERK

This case assigned to District Judge Marshall
and to Magistrate Judge Kearney

## CIVIL "RICO" COMPLAINT

Comes now the Petitioner, Bradley C. Burchfield, and for a CIVIL "RICO" COMPLAINT under 18 U.S.C. §§ 1961-1968 Racketeer Influenced And Corrupt Organizations Statutes. In support of this complaint the petitioner states:

The petitioner served or caused to be served a 42 U.S.C. § 1985 Complaint to the Alibaba Group headquarters, See 6:20-cv-6150, at 400 Camino Real, San Mateo, CALIFORNIA; in January 2021. In February 2021, Alibaba Group anounced it would no longer sell methamphetamine (Isopropylbenzylamine), Chemical CAS # 102-97-6 on the groups electronic platform after April 2021. They committed Securities Fraud.

That same month, February 2021, Alibaba Group (BABA) stock price fell in half, See 18 U.S.C. § 1963 (m)(1-5), when it's investors such as JP Morgan Chase Bank (busted with a billion dollars in cocaine on a boat owned by the bank), Amazon, and Blackrock withdrew their investments. The owner, Jack Ma was at that time valued at $50 Billion dollars.

In December 2021, while at home with my fiance Staci McGrew (Her father is an Arkansas State Representative) received a death threat from an unknown Mexican (John Doe) refering to Casey Zhao, a Chinese actor who operates an Alibaba website in violation of 18 U.S.C. § 1961 (1)(A) section 1512 and 1513 establishing a "pattern of racketeering" under 18 U.S.C. § 1961 (5) by tampering or retaliating against a witness or informant.

Under 18 U.S.C. § 1963 (k) the testimony of any witness, the Petitioner and his fiance, relating to the forfeiture of property by mitigation or remission petition may be ordered to be taken by deposition under Rule 15 Fed. R. Crim. P. Under 18 U.S.C. § 1963 (4) a hearing must be held 30 days after filing. The threat of violence is a violation under 18 U.S.C. § 1962, and § 1961, the Defendants have an "enterprise" established to sell narcotics and defraud the American public. See U.S. v. Bledsoe (8th Cir 1982)

## JURISDICTION

Concerning jurisdiction and venue under 18 U.S.C. § 1963 (j), "the district courts of the United States shall have jurisdiction to enter orders without regard to the location of any property or security." This Honorable Court also has jurisdiction under 18 U.S.C. § 1965 (a-d), other civil remedies concerning venue and immunity of witnesses can be found under 18 U.S.C. § 6001-6005, as well as 18 U.S.C. §§ 1963 and §§ 1964. See U.S. v. Keltner (8th Cir 1998) or U.S. v. Wilson (E.D. Ark 1998)

## RELIEF

The Petitioner, a potential witness, has been threatened and, subsequently, the life of his fiance, Staci McGraw, could also be in danger as she has possession of the Petitioner's phone and personal effects at her home, 30 N. Badalona Dr. Hot Springs Village, AR 71909; 501-620-3450. Under 18 U.S.C. §§ 1964 (c), any person injured by a Defendant under 18 U.S.C. § 1961 (1)(A) or § 1962 is due damages three fold the loss. A loss of life, or threatened loss of life, is irreplacable. Considering, the Petitioner has been injured by the Defendants violations of 18 U.S.C. § 1961 (1)(A) as he purchased a controlled substance the Defendants were "legally" dealing, according to the DEA website, the Petitioner was illegally convicted to 16 years imprisonment by the State of Arkansas, and was threatened by an actor of Alibaba Group for being a "whistleblower". See U.S. vs. Mattock (8th Cir. 1982) Double Jeopardy.

The Petitioner seeks compensatory and punitive damages in the amount of 10% of the Defendants net worth, see 18 U.S.C. § 1963 (g)(3), not to exceed $500 Billion Dollars U.S. The Petitioner also seeks witness protection for himself and his fiance.

Under penalty of perjury, 18 U.S.C. § 1963 (1)(3), the Petitioner declares the statements herein are true.

02/21/22

Respectfully Submitted,
Bradley C. Burchfield
3564 Albert Pike
Hot Springs, AR 71913

New Address
109 Goodgame St.
Camden, AR 71701

Bradley Burchfield #41347
109 Goodgame St.
Camden, AR 71701

LITTLE ROCK AR 720
25 FEB 2022 PM 4 L

USA FOREVER

United States District Courthouse
Office of the Clerk
500 W. Capitol Ave.
Little Rock, AR 72201

Legal Mail

This mail originated from a criminal justice facility.

Legal Mail

72201-333499

Mailed 2/24/22

# EXHIBIT 7

Case 4:22-cv-00193-DPM Document ... Filed 03/23/22 Page ... of ... PageID #99

IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF ARKANSAS

Bradley C. Burchfield, et al. Petitioner
v. Case No 4:22-CV-00193-DPM
Jack Yun Ma, Alibaba Group Respondents
Holding Limited (Joseph C. Tsai,
Jonathan Zhaoxi Lu, Maggie Jury Demand
Wei (Wu) David Zhang (CEO); ☑ Yes
Erica Wang; Casey Zhao; ☐ No
John Doe; Xichang New Materials
Ltd; JP Morgan Chase Bank;
Amazon; Drug Enforcement Agency (Director) et al.

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
MAR 23 2022
TAMMY H. DOWNS, CLERK
By: DEP CLERK

Amended Complaint

Comes now the Petitioner, Bradley C. Burchfield, and for an Amended Complaint in the above referenced case. The Petitioner brings this case under 18 U.S.C. § 1961-1968 "Racketeer Influenced Corrupt Organization"; Ark Code 4-119-101-105 "Online Marketplace Inform Act"; the Alien Tort Act of 18 U.S.C. § 2333(a); and violation of the Controlled Substances Act, and unjust enrichment.

In addition, the Petitioner pleads with the court for relief under 21 U.S.C. 1901 Section 201(a) of the Terrorism Risk Insurance Act (TRIA), the Anti-Terrorism Clarification Act of 2018, and to have the Defendants listed the Office of Foreign Asset Control as a Foreign Narcotics Kingpin Designation Act of 18 U.S.C. § 2331, 2333-34 Section 805(b). See Stansell v. Revolutionary Armed Forces of Columbia (M.D. Fla. 2010; D.D.C. 2019); 28 U.S.C. § 1963; they also committed theft under Ark Code Ann § 16-118-107

STATEMENT OF CLAIMS

The Petitioner, as owner of Burchfield Sales & Consulting LLC and Burchfield's Welding & Fabrication LLC, made purchases from Alibaba Group Holding Limited's electronic platform (www.alibaba.com), for substances advertised as "rust inhibitors" to be used as weld-through etch primer in the course of his business. This was in March of 2020. The substance was also marketed under "acrylic nail adhesive" as a liquid which he also purchased. The substance had a chemical CAS # 102-97-6, which the petitioner researched after the purchase and receipt

of the products. The products had a distinct ammonia smell similar to a Chinese nail parlor.

After using both products as top-applicated primer in the course of his business as a welder the products, in fact, did not inhibit rust. Even after putting the liquid product, which can also be purchased from Amazon, into a paint gun and applying the substance very liberally on the surface of bare metal the piece still rusted after being welded. The petitioner also attempted to use it as an acrylic nail resin but the nails fell off after being applied. Subsequently, the Petitioner herein, a business owner, could not sell the products as advertised, and sustained excessive losses in business capital and to his business property as the he used it on his [illegible] business owned welder and it rusted the main armature and electrical coils.

One particular package was wrapped in Homeland Security tape, and another was addressed from the CEO David Zhang, of Weifang China, to the petitioner as the Consignee from the Consignor, respectively. Another package, all were samples paid for by the Petitioner, was never delivered and as such, per Alibaba policy, the Petitioner filed a complaint with Alibaba to have the money ($650.00) returned to the Petitioner. The Salesperson told the petitioner he was not refunding the money or the products. The Petitioner has spent upwards of $6,000.00 on this product. After some research, it turns out this product is not a "rust inhibitor" but a by-product when pharmaceutical companies make methamphetamine.

Alibaba lists the product as isopropylbenzylamine, as does Amazon, Millipore Sigma, Sigma Aldrich, India Mart, and even the Drug Enforcement Agency's website says it's a "federally legal" substance contains the same chemical formula as methamphetamine. As luck would have it the petitioner was arrested with some of this product in his possession and was charged with possession of methamphetamine. All charges but one were dropped, but the Petitioner has sustained loss to his business and his property as the welder will no longer strike an arc and is covered

in a considerable amount of rust. The Petitioner tried several ways to get the product to work as advertised and since it was sold on Amazon the Petitioner used it like Frank's Red Hot Sauce and he "put that shit on everything".

The Petitioner was also labeled in the local paper as a drug addict and lost several contracts from being slandered.

The Petitioner, after arrest filed 40 § 1983 suits against the defendants, and as the Fed. R. Civ. P. State that after being found indigent the court would order the United States Marshals to serve the complaint but does not say the petitioner could not serve it, he served 6:20-cr-6150 on the whole defendant list and their private attorneys, As well as to individual Chinese companies on the Alibaba electronic platform. Subsequently, an announcement was issued in February 2021 that the products mentioned herein would no longer be sold on the site after April 2021 and the stock price fell in half. Similar to the $55 billion dollar loss of 15% during the "class-period" of their initial public offering in 2014-15. The Petitioner can verify all of the statements herein with evidence being held at his fiance's home at 30 N. Badalona Dr, Hot Springs Village, AR 71909.

Since the filing, my fiance Staci McCrew, received death threats at her job which she reported to local authorities and DTF. She believes it is a member of an Aryan Gang that tortured and kidnapped her several years ago. The petitioner believes it is related to these filings as he sent the case to the Rosen Law Firm and Glancy, Prongay + Murray LLP, See Ciccarello v. Alibaba Grp. Hldg. Ltd (S.D. N.Y. 2022)

In addition, another threat was received from Defendant John Doe (Mexican Defendant) in December 2021 while at home with my fiance and her family (her father is an Arkansas State Representative) I received a threatening message written in Spanish referring to Casey Zhao, a Chinese actor, who sells seeds for Naturix on Alibaba platform like Ma Huang seeds used in traditional Chinese Medicine and legal with the FDA as Ma Huang extracts are a food not a drug. The messages were sent on Facebook.

Also, for the court's knowledge, while searching for a muffler for my 1947 Lincoln Shorthood I discovered that silencers, M-16 bolt carriers, and firing pins could be bought on the site as well as armored vehicles and personnel carriers. Which leads the Petitioner to believe that the Alibaba platform is in all reality a narcotics and illegal arms "criminal enterprise" which has also committed wire fraud 18 U.S.C. §1341 and mail fraud 18 U.S.C. §1343 by mislabeling the substances being paid for and the substances being shipped as they are shipped under the names calcium acetate, poly-vinyl alcohol, and acrylic nail resin. These, along with the original predicate acts in the original complaint (18 U.S.C. §1961 (1)(A) dealing in controlled substance which is chargeable under State law and Sections 1512 + 1513 "tampering or retaliating against a witness the Petitioner ) are all "RICO Criminal predicate acts" under 18 U.S.C. 1961(5). As the Petitioner has disclosed the substance of the transactions as damages to his business (listed on Alibaba Cloud as Burchfield Sales & Consulting LLC; See DAI v. Alibaba Cloud US LLC (E.D. Ny 2020)) that pleading in context would satisfy the element of 18 U.S.C. § 1962(a-d) as needed for a civil rico claim, and fraud.

At all times, each Defendant was materially involved in multiple acts herein constituting a "pattern of racketeering", acts of terrorism as foreign narcotic kingpins, and the Petitioner has been victimized by the lack of prosecution by the federal courts and the Drug Enforcement Agency Director (Official Capacity) as the information on their public website is misleading to the public/consumers as to the legality of isopropylbenzylamine. There is no precedent involving this substance in any case in the United States courts. This "enterprise" consists of more than 5 people.

In addition, by not making these reports and emails public information for their investors further acts of securities fraud are also involved although the Petitioner has no claim to these acts other than the information stored on his Alibaba account. Fed. R. Civ. P. 9(b), Private Securities Litigation Reform Act. See 18 U.S.C. § 1963(K); (g)(3); Cocaine and fentanyl (Opiates) also sold on the site by chemical CAS# or formula (Petitioner personal material)
All of the defendants showed "a pattern of racketeering" to run a "continuing criminal enterprise".

Case 4:26-cv-00827-DPM Document 1 Filed 03/23/22 Page 5 of 8 PageID #: 13

# DEFENDANT INFORMATION

Defendant 1 - Jack Yun Ma (18 U.S.C. §1961 (3-5))
Founder Alibaba Group Holding Limited
Address: 400 Camino Real
San Mateo, CA
"A resident of New Jersey," See Ma v. Community Bank 494 F. Supp. 252 (E.D. Wis. 1980)

Defendant 2 - Alibaba Group Holding Limited (18 U.S.C. §1961(3-5))
Joseph C. Tsai - Co-Founder
Jonathan Zhaoxi Lu - CEO & Director
Maggie Wei Wu - CFO
David Zhang - Current CEO
Address: Corporation Service Company (SEC Registered Address)
1180 Avenue of the Americas
New York, NY 10036

400 Camino Real — Physical Address in United States.
San Mateo, CA

See Stepp v. Alibaba Grp Hldg. Ltd (W.D. Ky 2018)

Defendant 3 - Xichang New Materials (Ltd.?) (18 U.S.C §1961(3-5))
Sweety Yin & Erica Wang - Employee/Salespersons
P.O. Box (Petitioner's personal materials)
Rosemead, CA

Defendant 4 - Casey Zhao - Notorix (18 U.S.C. §1961(3))
Address listed Alibaba Cloud
Ark. Code §4-119-101-105

Defendant 5 - John Doe "Juan Doe" (18 U.S.C. § 1961(1)(A) Sections 1512 + 1513)
Mexican National?
Facebook friends w/ Casey Zhao
Address unknown, Petitioner's Personal materials

18 U.S.C. 1961(3-5)

Defendant 6 - Alibaba Group Holding Limited (Investors) 10%
J.P. Morgan Chase Bank
Amazon, LLC
Blackrock; et al
Any investor involved in "For Profit Prisons" (Discovery)

Address: Corporation Service Company
1180 Avenue of the Americas
New York, NY 10036

Defendant 7 - Director "[illegible]" Drug Enforcement Agency
Timothy J. Shea (Official Capacity)
Address: United States Dept. of Justice 18 U.S.C. § 1961(4)
Commercial Litigation Branch
Ben Franklin Station
Washington, D.C. 20044

False and misleading information published concerning isopropylbenzylamine on DEA website leading to the public health epidemic and systematic incarceration, and deprivation of civil rights of American Citizens while protecting Chinese corporations. ~~&~~ Breach of Contract, Failure to protect etc, acts of fraud.

All defendants are sued in both their professional (official) and individual capacities excluding Defendant 7 only in his ~~[illegible]~~ official capacity.

Relief

As the Petitioner suffered damages to both his business and his property (1947 Lincoln Shorthood and 2002 Chevrolet Silverado 3500 - The application of isopropylbenzylamine as a "rust inhibitor" to the under carriage of the vehicle weakened the aluminum on the transfer case leading to the failure of the Allison Transmission $3,500.00 + $4,000.00 Lincoln Welder-) see 18 U.S.C. § 1964(c) as well as 18 U.S.C. 1963 (a)(3) seeing

as "Compensation can be awarded to persons providing information resulting in a forfeiture under this section" the Petitioner should be awarded "three fold the damages under provision 18 U.S.C. 1964(c).

~~Punitive~~ Compensatory damages in the amount of $22,500.00 for damage to the welder and the truck, and $18,000.00 for loss of capital.

The Petitioner seeks for declatory relief under the Terrorism Risk Insurance Act (TRIA) 21 U.S.C. §1901 Section 201(a) to list the Defendants in all, or in part, on the OFAC list as a Foreign Narcotics Kingpin Designation Act of 18 U.S.C. § 2331, 2333-34 Section 805(b) to freeze their assets in the United States at Citibank New York Branch, and the assets of their "third-party" sellers on alibaba.com or other associated websites. See Stansell v. Revolutionary Armed Forces of Colombia (District Court D.C. 2019 + M.D. Fla 2010)

~~Compensatory~~ Punitive Damages of $500,000,000,000.00 in United States Currency for deprivation of rights, duress (death threat), physical pain and suffering, etc, Attorney fees, pre-judgement and post-judgment interest, and to "pierce the corporate veil". See TerraRenewal v. McCarthy (E.D. Ark 2012)

Other relief sought is for this Honorable Court to assist the Petitioner in pouring a 55 gallon drum of federally "Whoop-Ass" all over the top of these Chinese gangsters heads by agreeing to a "Confidential Joint Prosecution and Sharing Agreement" and placing the Petitioner and his fiance, Staci McGrew, in the Witness Protection Program with the United States Marshals. My 70 year old mother's address is also listed on the site as I purchased LED lights purported to kill the Corona Virus that also did not work.

I declare under penalty of perjury 18 U.S.C. § 1621 and 18 U.S.C. § 1963(b)(3) that the foregoing is true and correct.

04/08/2022

03/20/2022 Bradley C. Burchfield
800 Spring St.
Hot Springs, AR 71901

Bradley Burchfield
109 Goodgame Street
Camden, AR 71201

LITTLE ... 20







This mail originated
from a criminal
justice facility

United States District Court
Office of the Clerk
600 West Capital Ave Suite A-149
Little Rock AR 72201-3325

Legal
Mail

72201-333919

Legal
Mail

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**Central Division**

BRADLEY BURCHFIELD,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, *et al.*,

Defendants.

No. 4:26-cv-00827-DPM-JJV

**DEFENDANT ALIBABA.COM US E-COMMERCE CORP.'S OPPOSITION TO PLAINTIFF'S MOTION FOR A RULING ON THE PENDING ANSWER OBJECTION, FOR CLARIFICATION OF THE ROLE OF HAROLD GONG, AND FOR PRIORITY CONSIDERATION**

Without waiving any defenses asserted in its Answer, Defendant Alibaba.com US E-Commerce Corp. files this Opposition to Plaintiff's Motion for a Ruling on the Pending Answer Objection, for Clarification of the Role of Harold Gong, and for Priority Consideration ("Plaintiff's Motion") (ECF No. 37) and Brief in Support (ECF No. 38).

Plaintiff's Motion should be denied. It is another example of Plaintiff wasting the Court's time by filing papers that unnecessarily complicate matters without advancing the ball towards a resolution of this litigation.

***First***, there is no need for the Court to do anything to clarify the role of Harold Gong. While this lawsuit was pending in small claims court (Pulaski County District Court), Alibaba.com US E-Commerce Corp. filed its Answer (ECF No. 4) in that court. Mr. Gong signed that Answer on behalf of Alibaba.com US E-Commerce Corp. but not as an outside attorney representing that company. In Pulaski County small claims cases, parties are not represented by attorneys. After this

lawsuit was transferred to the Circuit Court of Pulaski County, Arkansas at Plaintiff's request, this lawsuit was removed to this Court. Since that removal, undersigned counsel have been counsel of record for Alibaba.com US E-Commerce Corp. in this lawsuit, so there should be no confusion regarding how (or on whom) Plaintiff is required to serve his filings on Alibaba.com US E-Commerce Corp. They should be served on undersigned counsel. Mr. Gong is not admitted to practice in this Court, and he has not said or done anything to suggest that he is outside counsel for Alibaba.com US E-Commerce Corp. in this lawsuit, so there is no need for any filings to be served on Mr. Gong.

***Second***, Plaintiff's Motion complains that the answer filed by Alibaba.com US E-Commerce Corp. in small claims court was late by one day, but his attempt to take advantage by requesting an entry of default against Alibaba.com US E-Commerce Corp. is unavailing. The "law favors decisions on the merits." *Holyoke Mut. Ins. Co. v. East Arkansas Area Agency on Aging, Inc.*, No. 3:17-cv-83-DPM, 2018 WL 316024, at *2 (E.D. Ark. Jan. 5, 2018), and there is no basis to conclude that a one-day delay caused any prejudice to Plaintiff. Therefore, the Court should reject his default argument. If the Court concludes that the record should be developed regarding this issue before it issues a ruling, Alibaba.com US E-Commerce Corp. requests notice and an opportunity to present further briefing regarding this issue.

***Finally***, Plaintiff's Motion (Paragraph 4) discusses the docket sheet—which, when Plaintiff filed that motion, showed that only one defendant had filed a response to the Complaint (Alibaba.com US E-Commerce Corp.'s answer)—and states that other defendants had not responded to the Complaint. That discussion is unnecessary and begs the obvious question of whether Plaintiff had effected service of process on any of the other companies named as

defendants in this lawsuit. To undersigned counsel's knowledge, Plaintiff did not do so, which would explain the lack of responses by other defendants.

For the foregoing reasons, the Court should deny Plaintiff's Motion.

Dated: October 29, 2026

Respectfully submitted,

McDANIEL WOLFF PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
1307 West 4th Street
Little Rock, AR 72201
(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

and

BALANCE LAW FIRM

B. Robert Liu (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2026, I electronically filed the foregoing opposition with the Clerk of the Court using the CM/ECF system. I further certify that, because Plaintiff is proceeding *pro se* and is not a registered CM/ECF participant, I served a true and correct copy of the foregoing opposition via United States First-Class Mail, postage prepaid, addressed to Plaintiff as follows:

Bradley Burchfield
5420 Kavanaugh Blvd. #7927
Little Rock, AR 72217

/s/ Brittany D. Webb
Brittany D. Webb, Ark. Bar No. 2023139

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

**Solution for Trade Assurance Order 91906090501027582**

**Alibaba Customer Service** <queryreply@service.alibaba.com> Thu, Jun 18, 2026 at 1:28 AM
To: burchfieldbradley123@gmail.com

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

Since this order is over three years old, the logistics information can no longer be verified. Additionally, the platform has no record of you contacting customer service regarding this order.

However, we fully understand your concerns, to better assist you and enhance your purchasing experience on our platform, we will help you apply 500USD Alibaba credit (validity period is 90days from the date of issue) to settle this case. This credit can be applied to your future trade assurance order, including product and shipping costs, but please kindly note it cannot be applied to payment processing fees, taxes, or other additional services.
You may check the credit amount/validity in My Alibaba > Coupons and Credit.

Important note: All discounts (includes coupons & credit) can be combined used in your future trade assurance order as long as your order exceeds the minimum amount of USD 0.30.

Alibaba.com Credit cannot be used to settle the remaining balance of an order.

Please reply AGREE if you can accept this option.

Thank you for your kindly trust and patience with us.

Best Regard,
Alibaba Service Team

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

# Solution for Trade Assurance Order 91906090501027582

**Alibaba Customer Service** <queryreply@service.alibaba.com> Mon, Jun 22, 2026 at 1:18 AM
To: burchfieldbradley123@gmail.com

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

We understand your concerns and the potential impact on you. If you confirm acceptance of USD 500 as the final settlement, we will offer you two refund options:

**Option 1: We will refund 500 USD Alibaba credit to your Alibaba account. ( It will take approximately 1-2 business days.)**

The validity period is 90days from the date of issue. This credit can be applied to your future trade assurance order, including product and shipping costs, but please kindly note it cannot be applied to payment processing fees, taxes, or other additional services.

You may check the credit amount/validity in My Alibaba > Coupons and Credit.
Important note: All discounts (includes coupons & credit) can be combined used in your future trade assurance order as long as your order exceeds the minimum amount of USD 0.30.

Alibaba.com Credit cannot be used to settle the remaining balance of an order.

OR

**Option 2: We will refund 500 USD to your bank account. ( It will take approximately 5-7 business days.)**

**You will need to provide the following cash bank account information and ensure that the account can receive foreign currency. Also, due to bank fees, the actual refund you receive will be less than 500 USD.**

Beneficiary Name:
Beneficiary Account Number
IBAN Code:
Routing Number (for U.S. Banks):
Sort Code (for UK Banks):
BSB Code (for Australian Banks):
Beneficiary Address:
Beneficiary Bank:
Beneficiary Bank Country:
Beneficiary Bank SWIFT Code （necessary）：
Intermediary Bank SWIFT Code (if applicable):
StreetName: (necessary，Maximum 70 characters)
BuildingNumber: (necessary，Maximum 16 characters)
PostalCode: (necessary，Maximum 16 characters)
TownName: (necessary，Maximum 35 characters)
CountrySubdivision: (necessary)

Please reply which option you prefer.

Thank you for your kindly trust and patience with us.

Best Regard,
Alibaba Service Team

---------------------------------------------------------------

发件人: [object Object]
发送时间: 19-06-2026 21:15
收件人: Alibaba Customer Service
主 题: Re: Solution for Trade Assurance Order 91906090501027582
[Quoted text hidden]

[Quoted text hidden]

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

---

**Solution for Trade Assurance Order 91906090501027582**

---

**Alibaba Customer Service** <queryreply@service.alibaba.com> Tue, Jul 7, 2026 at 8:23 AM
To: burchfieldbradley123@gmail.com

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

We want to make sure if you agree to accept 500USD refund as the final solution to settle this case?

Thank you for your kindly trust and patience with us.

Best Regard,
Alibaba Service Team

----------------------------------------------------------------

发件人: [object Object]
发送时间: 04-07-2026 00:04
收件人: Alibaba Customer Service ;levinsc@sullcrom.com;samwilliamson@quinnemanuel.com
主 题: Re: Re: Solution for Trade Assurance Order 91906090501027582
[Quoted text hidden]

[Quoted text hidden]